Jane DOE et al., Plaintiff,

v.

OSTEOPATHIC HOSPITAL OF WICHITA, INC., et al., Defendants.

Civ. A. No. W-4488.

United States District Court, D. Kansas.

Oct. 14, 1971.

**1358**

Michael D. Gragert, Legal Aid Society, Wichita, Kan., for plaintiff.

Thomas A. Wood, Smith, Shay, Farmer & Wetta, Wichita, Kan., for defendants.

George H. Darden, Equal Employment Opportunity Commission, Washington, D. C., Sandra Neese, Equal Employment Opportunity Commission, Kansas City, Mo., amici curiae.

## MEMORANDUM OF OPINION

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

WESLEY E. BROWN, Chief Judge.

This is an action for damages and other relief which plaintiff brings under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, which prohibits discrimination in employment on the basis of sex. Plaintiff alleged that she was wrongfully discharged from her office position at the defendant hospital because she was pregnant, and unwed. The matter was tried to the Court, and after considering the testimony, exhibits and stipulations of the parties, the Court makes the following findings of fact.

### FINDINGS OF FACT

The plaintiff, Jane Doe, was employed in the business office of the defendant Osteopathic Hospital of Wichita, Inc., from February 7, 1969 through May 6, 1970. On May 6, 1970, her rate of pay was $2.00 per hour.

The defendant, John McGraw is Administrator of the defendant hospital, and the defendant, Cletus Gegen is office manager of that hospital. Cletus Gegen was the plaintiff's immediate supervisor, and the defendant, John McGraw was the immediate supervisor of the defendant, Cletus Gegen.

Plaintiff's duties during her employment at the hospital consisted of general office work, and in May, 1970, these duties included bookkeeping, light clerical work, some admission of patients and some contact with customers of the hospital at the cashier's window.

On May 6, 1970, plaintiff had never been married, and she was approximately five and one-half months pregnant.

Prior to May 6, 1970, plaintiff had not advised her supervisors, Gegen and McGraw of her pregnant condition. She believed that if she did so she would be fired, and she wished to continue working as long as possible because she need-

ed the money. Miss Gegen, however, was aware of this fact because of information received from one of plaintiff's co-workers, and she and defendant McGraw had discussed the situation some two weeks prior to May 6th. McGraw and Gegen determined that if plaintiff did not "come to them" about the matter within two weeks time, she would be fired.

On May 6, 1970, plaintiff was discharged from her employment with the Osteopathic Hospital, as of that date, although she was allowed to complete her day's work. The reason expressed to her was that she was pregnant and unwed. Plaintiff's discharge was accomplished by the defendant, Cletus Gegen, under the instructions of the defendant, John McGraw.

No person, other than the plaintiff, has within the past five years been discharged from employment at the hospital because of unwed pregnancy. However, no person, other than the plaintiff, employed under the supervision of the defendant Gegen, within the past five years has been known by any of the defendants to be unwed and pregnant during such employment. In other departments of the hospital, and during the past five years, three nurses and one laboratory technician have been employed by the defendant hospital, while unwed and pregnant. None of these persons has been discharged for the reason of unwed pregnancy.

There was in existence throughout the term of plaintiff's employment by the defendant, Osteopathic Hospital, a "Personnel Handbook" [Plaintiff's Ex. 3]. This handbook contained the following provisions relating to leave of absence:

"A. The purpose of a leave of absence is to preserve for the employee all rights and benefits which he has earned or accrued to the starting date of leave. Employees on leave of absence earn no benefits, however, upon returning to work their status on that day is the same as it was on the last day worked * * *."

"Leaves may not be granted to exceed 30-day periods (except maternity or military leave) but may be renewed upon application of employee with approval of supervisor. Failure to renew application terminates employment. * * *

"B. After a qualifying period of full-time consecutive service, the following type of leave of absence will be granted upon approval of your supervisor and Hospital Administrator.

   a.  Sick Leave

   b.  Maternity

   c.  Marital

   d.  Death in immediate family

   e.  Jury Duty

   f.  Military Training

   * * * * * *

"*Maternity Leave.*

This leave may be granted upon written request and automatically terminates in six months unless an extension is agreed upon."

The handbook contained the following provisions relating to termination of service and dismissal for cause:

"A. An employee may resign in good standing by giving two weeks advance notice to the hospital. Employees leaving of their own volition are entitled to receive unpaid vacation time.

"B. Employees continuously employed for six months are entitled to one week advance notice, or one week severance pay, if terminated at the request of the hospital.

"C. Employees continuously employed for one year are entitled to two weeks advance notice, or two weeks severance pay, if terminated at the request of the hospital.

"D. The hospital may waive severance pay if the cause for dismissal is:

   1.  Insubordination

   2.  Too frequent absence

   3.  Intoxication on the job

   4.  Dishonesty

5. Improper performance of duty
6. Conviction of criminal acts or jail sentence."

At the time plaintiff was discharged, she was not given two weeks notice, nor severance pay, and she was not given an opportunity to request maternity leave. Plaintiff was not given a handbook and was not aware of the provisions regarding maternity leave of absence which were set out therein. If she had been given the opportunity, she would have requested a maternity leave of absence.

Throughout the term of plaintiff's employment, her performance was of satisfactory quality. Although Miss Gegen had occasion to reprimand her concerning her hair style, and there were some minor disputes between the girls working in the business office, none of these instances were of such serious nature as to prompt Miss Gegen to discharge plaintiff.

In preparing the official written "termination report", Miss Gegen indicated that plaintiff's "cooperation," "attitude" and "initiative" were "fair"—and that the quality of her work, her attendance, and "personal attributes" were rated as "good". With reference to the cause for termination, the following appeared:

"Pregnancy—Unwed.

"(Jane Doe's) attitude was always poor. We had hair problems from the beginning. Perhaps it was the generation gap."

This report further indicated that plaintiff was eligible for re-employment "only on certain conditions." [Pltf. Ex. 4]

During the term of plaintiff's employment, married, pregnant women were actively employed by the defendant hospital, and were routinely granted maternity leaves of absence. One such married pregnant woman was employed in plaintiff's department at the time plaintiff was discharged. The fact of pregnancy did not affect the quality of plaintiff's performance and she would have been able to perform her duties in the business office through the eighth month of her pregnancy.

Defendants Gegen and McGraw testified that they believed that plaintiff's pregnant, unwed condition adversely affected the hospital's "public image" and affected the morale of other office employees. There was no evidence, however, as to any instance in which the hospital's public image was adversely affected, nor was there any evidence that any other employee's "morale" was adversely affected.

At trial defendants Gegen and McGraw testified that plaintiff was terminated for cause—that is insubordination—for failing to "come to them" about her pregnant condition. However, in view of the stated reason given to plaintiff, and in view of the written records of the hospital, the Court finds in fact that plaintiff was discharged because she was pregnant and unwed, and that her discharge was not "for cause."

At the time of plaintiff's discharge, she was being paid at the rate of $2.00 per hour and working 40 hours per week. If plaintiff had continued in defendant's employ, she would have received a 10-cent per hour cost-of-living wage increase on January 1, 1971, and a further 10-cent per hour anniversary-of-employment increase on February 7, 1971.

After her discharge, plaintiff made a reasonable and good faith effort to seek other employment in order to mitigate her loss of income, and, from the time of her discharge to the date of trial, she did earn a total amount of $1,373.79 through an employment relationship with Manpower, Inc. of Wichita.

On July 31, 1970, plaintiff made written complaint with the Equal Employment Opportunity Commission that she had been unlawfully discharged on the basis of her sex. The complaint was registered "against the Osteopathic Hospital of Wichita 2622 West Central, Wichita, Kansas". Paragraph 3 of this complaint stated that she had been dischargd by defendant Cletus Gegen, under the instructions of defendant McGraw.

There was no evidence that the E.E.O.C. notified the hospital of the

complaint, or made any investigation or conciliation efforts with regard to the same. However, on November 13, 1970, the Equal Employment Opportunity Commission forwarded to plaintiff the "30-day" letter notifying plaintiff of her right to institute suit, and the instant action was thereafter timely filed by plaintiff.

The only two jurisdictional prerequisites to filing this action are (a) filing a complaint with the Commission; and (b) obtaining the "right to sue" letter. "Actual" conciliatory efforts are not required. See Cunningham v. Litton Industries (9th Cir. 1969) 413 F.2d 887; Johnson v. Seaboard Airline Railroad Company (4 Cir. 1968) 405 F.2d 645, cert. den. 394 U.S. 918, 89 S.Ct. 1189, 22 L.Ed.2d 451

## DISCUSSION

Section 2000e–2, Title 42 U.S.C.A. Provides that:

"(a) It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise, to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

Sub-part (e) of § 2000e–2, provides in pertinent part that:

"Notwithstanding any other provision of this subchapter, (1) it shall not be an unlawful employment practice for an employer to hire and employ employees * * * on the basis of his religion, sex, or national origin in those certain instances where religion, sex, or national origin *is a bona fide*

*occupational qualification reasonably necessary to the normal operation of that particular business or enterprise* * * *"*

The legislative history of this legislation indicates that the exception for bona fide occupational qualifications is to be narrowly construed, and various courts have so determined. E. g. Diaz v. Pan Am. World Airways, Inc. (1971, 5th Cir.) 442 F.2d 385; Weeks v. Southern Bell Telephone and Telegraph Co. (5th Cir. 1969) 408 F.2d 228. The burden of establishing the bona fide exception is upon defendants. Weeks v. Southern Bell Telephone and Telegraph Company, *supra,* 408 F.2d 228. The E.E.O.C. guidelines provide for a narrow construction of the exception—29 C.F.R. 1604.1(a). "By adding the prohibition against job discrimination based on sex * * * Congress intended to prevent employers from refusing 'to hire an individual based on stereotyped characterizations of the sexes.'" Phillips v. Marietta Corp. (1971) 400 U.S. 542, 91 S.Ct. 496, 27 L.Ed.2d 613, concurring opinion, 400 U.S. at p. 545, 91 S.Ct. at p. 498, 27 L.Ed.2d at p. 616, and see cases cited, Bowe v. Colgate-Palmolive Co. (7th Cir. 1969) 416 F.2d 711; Weeks v. Southern Bell Telephone and Telegraph Co., *supra,* 408 F.2d 228.

In the guidelines set out by the Commission, narrowly construing the exception, it is stated that certain situations will not warrant the application of such exception, that is, assumptions of comparative employment characteristics of women in general—the refusal to hire an individual based on "stereotyped characterizations of the sexes", or employment discrimination because of preferences of co-workers, the employer, or clients or customers of the employer. See 29 C.F.R. § 1604.1(a) (1) (i) (ii) (iii). These regulations are entitled to "great deference". Udall v. Tallman (1965) 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616, 625; Phillips v. Marietta Corp., *supra,* 400 U.S. 542, 90 S.Ct. 496, 27 L.Ed.2d 613.

■ The defendants in effect contend that since it has not discriminated in favor of "pregnant, unmarried men", plaintiff can have no complaint, but this of course is not the question. Plaintiff's condition of being visibly pregnant, and in this case, unwed, was a condition peculiar to the female physiology alone. The evidence in this case supports a finding that that fact of pregnancy alone did not adversely affect her job performance, and that her termination was in fact based on plaintiff's accompanying marital state, that is, that she was unwed. There being an absence of any evidence that plaintiff's marital state or her pregnancy had any relationship at all to the performance of her duties, the Court can only conclude that there was discrimination in this instance. See and compare Phillips v. Marietta Corp. (1971) 400 U.S. 542, 90 S.Ct. 496, 27 L.Ed.2d 613 (*refusal to employ women with pre-school age children, while hiring men with pre-school age children*); Sprogis v. United Airlines, Inc. 7th Cir. 1971) 444 F.2d 1194 (*married female employees discharged*); Diaz v. Pan Am. World Airways, Inc., supra, 442 F.2d 385; and see Cohen v. Chesterfield County School Board (E.D.Virginia, 1971) 326 F.Supp. 1159 *which held that board's regulation requiring women teachers to take a leave of absence at end of 5th month pregnancy had no rational basis, and was discriminatory and denial of equal protection of the laws under 42 U.S.C. § 1983.* As noted in *Sprogis, supra,* 444 F.2d at 1198:

The scope of (§ 2000e–2) is not confined to explicit discriminations based 'solely' on sex. In forbidding employers to discriminate against individuals because of their sex, Congress intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes. (The section) subjects to scrutiny and eliminates such irrational impediments to job opportunities and enjoyment which have plagued women in the past. The effect of the statute is not to be diluted because discrimination adversely affects *only a portion of the protected class.* Discrimination is not to be tolerated under the guise of physical properties possessed by one sex * * * or through the unequal application of a seemingly neutral company policy. Cf. Phillips v. Martin Marietta Corp., 400 U.S. 542, 90 S.Ct. 496, 27 L.Ed.2d 613. [Emphasis supplied.]

Under the circumstances set out above, the Court can only conclude that plaintiff's evidence made a *prima facie* showing of discrimination, and that defendant Osteopathic Hospital failed to carry its burden of establishing that plaintiff's condition represented a bona fide occupational disqualification which was reasonably necessary to the normal operation of the particular business of the hospital. In light of the foregoing, the Court makes the following conclusions of law.

## CONCLUSIONS OF LAW

The Court has jurisdiction of the subject matter of this action and of the parties herein.

The defendant Osteopathic Hospital of Wichita, Inc., and the defendants Gegen and McGraw, are "employers" within the meaning of 42 U.S.C.A. § 2000e(b), and subject to the provisions of 42 U.S.C.A. § 2000e–2 et seq.

Plaintiff's discharge on May 6, 1970 was an unlawful discrimination, on the basis of sex, in violation of the provisions of 42 U.S.C.A. § 2000e–2, in that, she was dismissed because of unwed pregnancy, a condition peculiar to the female physiology, which condition was *not* a bona fide occupational disqualification by reason of being reasonably necessary to the normal operation of the business of the Osteopathic Hospital.

It is irrelevant that there were no other known females discharged by defendants because of unwed pregnancy within a five-year period preceding plaintiff's termination, since § 2000e–2 prohibits discrimination against "any individual".

■ If plaintiff was discharged for her failure to notify defendants of her unwed pregnant condition, such termination likewise constituted unlawful discrimination in that she was dismissed for failure to exercise an arbitrary duty not imposed upon any member of the male sex, and totally unrelated to job performance.

■ By reason of such unlawful discrimination, the Court concludes that should plaintiff desire, she is entitled to reinstatement into her previous position, at a salary commensurate with that paid to her at the time of her dismissal, plus those advances in salary to which she would have been entitled had she not been discharged; that she is entitled to back wages from the date of her discharge, minus an 8-week pre-delivery and post-natal care period, as if she had continued in defendants' employ, including appropriate pay increases to which she would have been entitled, up to the date of the trial of this action. Such award should, however, be decreased by such sums as plaintiff has earned in wages during the period between her discharge and the date of trial. The judgment for such reinstatement and award shall be entered against the defendant hospital and not as to the individual defendants, Gegen and McGraw.

The Court determines that under the circumstances presented in this case, plaintiff is not entitled to an award of punitive damages against any defendant.

The Court determines that the circumstances of this case do not require any type of prospective injunctive relief, and plaintiff's prayer for an order enjoining future discriminatory practices will be denied. However, the Court is concerned with possible adverse effects which plaintiff's unlawful termination may have upon her future employment opportunities. For this reason, it will be the order of this Court that a copy of these findings and conclusions, together with a copy of the judgment entered in this action, be made a permanent part of the employment records of plaintiff in the files and records of the defendant Osteopathic Hospital. In the event the parties can agree to some other method of insuring that plaintiff's future employment opportunities will not be adversely affected by matters contained in her employment file, relating to her unlawful discharge, then the Court will entertain such alternative suggestion.

The Court further finds that plaintiff is entitled to an award of costs and attorney's fees in the prosecution of this suit. Plaintiff's attorney has previously submitted an accounting of his pre-trial hours involved in prosecuting this suit, totalling 58.25 hours. In addition thereto, the trial of this case involved trial time of one-half day. Under such circumstance, the Court finds that the sum of $1,285.00 is a reasonable fee for the services of plaintiff's attorney. The judgment for such fee and costs shall be against defendant hospital and not against the individual defendants Gegen and McGraw.

In accordance with the foregoing findings of fact and conclusions of law,

It is ordered that counsel for plaintiff prepare, circulate, and submit a proposed judgment to be entered in this case, in accordance with the findings and conclusions set out above, within a ten-day period from the date of this order.

The Clerk is directed to forward copies of these findings, conclusions and order to all parties herein.