A. P. GREEN SERVICES DIVISION OF BIGELOW-LIPTAK CORPORATION, Plaintiff-Appellant, *v.* FAIR EMPLOYMENT PRACTICES COMMISSION *et al.* (JOHN KING *et al.*, Defendants-Appellees.)

(No. 58991;

First District (4th Division)—April 10, 1974.

*Rehearing denied June 11, 1974.*

Allan N. Lasky, Joel L. Widman, and Howard P. Alterman, all of Chicago (Fiffer & D'Angelo and Korshak, Rothman, Oppenheim & Finnegan, of counsel), for appellant.

William J. Scott, Attorney General, of Chicago (Paul J. Bargiel, Assistant Attorney General, of counsel), for appellees.

Mr. PRESIDING JUSTICE ADESKO delivered the opinion of the court:

The appeal in this case arises from the Circuit Court of Cook County's affirmance of a decision of the Illinois Fair Employment Practices Commission. The defendants-appellees, Waters and King, who are black bricklayers, filed charges against the plaintiff alleging that it had committed an unfair employment practice by refusing to hire them because of their race. The complainants alleged that after they were denied employment white bricklayers were hired by the plaintiff. On May 17, 1972, a hearing was held before the Fair Employment Practices Commission (hereinafter F.E.P.C.) hearing examiner, Garland W. Watt, and in a recommended order he found in favor of Waters and King. The hearing examiner found that A. P. Green gave preferential hiring treatment to white bricklayers in violation of the Fair Employment Practices Act. (Ill. Rev. Stat. 1971, ch. 48, par. 853(a).) The hearing examiner also awarded Waters and King compensatory damages.

A. P. Green filed a petition for review and reversal of recommended order and decision or for an opportunity to present additional evidence and the matter was argued before the full F.E.P.C. On October 25, 1972, the Commission issued its order which affirmed the decision of the hearing examiner. A complaint for administrative review was filed by A. P. Green on November 21, 1972, and on February 5, 1973, after oral argument, the trial court sustained the order and decision of the F.E.P.C. on a finding that there was substantial evidence to support it.

The plaintiff appealed and raises three issues for review. The plaintiff contends the trial court erred in finding that there was substantial evidence to uphold the order and decision of the F.E.P.C.; that the order of the F.E.P.C. is not based on a preponderance of the evidence; and that the Commission lacks the authority to make an award of compensatory damages. We do not agree with these contentions.

A. P. Green is a mason contractor and performs the construction, maintenance and repair of industrial heat enclosure systems. The plaintiff hires bricklayers for each of its jobs and all of the hiring is done at its office in Lansing, Illinois. There is no standard form for each applicant to fill out but rather an applicant leaves his name, phone number and address with someone at the Lansing office. A hiring list of applicants is maintained but no record is kept of the date of each application nor is the list left in chronological order. It was the plaintiff's policy to do all hiring from this list but bricklayers were hired whose names did not appear on it. There was no hiring done at the job site.

The plaintiff commenced work on a project referred to as the Clark Oil job on April 14, 1971. On April 19, 1971, Waters and Donald Samuels went to the plaintiff's office in Lansing to apply for work on the Clark Oil job. Waters testified before the hearing examiner that he talked to a

Mr. Peterson at the plaintiff's office and Peterson said the Clark Oil job had not started. Waters testified that he told Peterson that he wanted to leave his name and phone number. Waters did so but did not fill out any type of application form. On April 22, 1971, Waters and King went to the Clark Oil job site and talked to the foreman, Mr. Pfisterer, about obtaining employment. The defendants were told to go to the Lansing office to apply. Waters and King returned to the Lansing office and spoke with Peterson and their names were taken by a girl in the office. Waters stated he was never called by the plaintiff for employment at the Clark Oil job.

Mr. King's testimony was substantially similar to and corroborated that of Waters. King also stated that he was never called by the plaintiff for employment at the Clark Oil job. It should be noted that both Waters and King were qualified bricklayers and had experience in all types of brick work.

The next witness called on behalf of Waters and King was Stanford Smith who was the director of field activities for the F.E.P.C. and who investigated this case. Smith investigated the complaints of Waters and King in the second week of July, 1971. He had a meeting with the legal counsel for the plaintiff and with Pfisterer, Peterson and Corrado. Smith stated he examined the hiring list of the plaintiff and observed the names of Waters and King on it.[1] According to Smith, Peterson stated at that time the plaintiff had 66 bricklayers working for it and one was black. Smith testified that after the defendants applied, seven bricklayers were hired and they were white. He did state one black bricklayer was hired for the Clark Oil job and his name was Pearson. This information was obtained through a conversation with Mr. Corrado, the general field superintendent for the plaintiff. The attorney for Waters and King asked Smith: "During the course of your conversation with Mr. Corrado, did you learn of any bricklayers or instances involving the hiring of bricklayers where those bricklayers had not applied prior to Waters and King." Smith replied: "No not really." The explanation Smith received as to why there was only one black on the plaintiff's hiring list was that its office was too far out and located where blacks did not come to secure employment.[2]

The next witness called on behalf of Waters and King was Willie G. Pearson, a black bricklayer, who stated he was hired for the Clark Oil

---

[1] This list was apparently not produced nor entered into evidence at the hearing. The record contains a hiring list but it does not have the names of Waters and King on it.

[2] The record is not clear as to what list Mr. Smith was referring.

job on April 13, 1971, and that he began working at the job site on April 26. Mr. Pearson testified that Corrado called him and asked him if he was busy and if he wanted to work at Clark Oil. Pearson told Corrado he did want to go to work at Clark Oil. The hearing examiner asked Pearson if any blacks applied for jobs after he began working at Clark Oil. Pearson replied that three blacks came to the job site. He identified them as Waters, King and John Gibson. The hearing examiner asked: "Do you recall whether or not any persons were employed on the Clark Oil site as bricklayers after these three Blacks applied?" Mr. Pearson replied: "Yes. To my knowledge there were four." It was also established that none of them were black.

James Corrado testified for A. P. Green and stated that he was the general field superintendent and that part of his duties was to secure manpower for the various jobs the company performed. He stated that applicants either appear in person or telephone and that for the Clark Oil job he secured approximately seven bricklayers plus a bricklayer superintendent. Corrado testified that after Waters and King applied, a foreman and two bricklayers were hired but that these men had been promised employment prior to the application of Waters and King. Corrado stated that between 1 week and 4 weeks before the Clark Oil job commenced he made promises of employment to each of these men. As to one of the bricklayers, Corrado stated he mentioned to him that he was doing the Clark Oil job and gave him an approximate starting date. The testimony of Corrado was not corroborated by any of the white bricklayers. In response to a question of the hearing examiner, Corrado testified that the hiring procedure of A. P. Green was "a little bit on the unorganized side." He also stated a great deal was left to his discretion.

Corrado testified that 70 percent of the jobs A. P. Green did, required only one bricklayer and that another 20 to 25 percent only required two bricklayers. Therefore, 90 percent of the jobs A. P. Green did required one or two bricklayers but Pearson, the only black regularly employed by A. P. Green, was sent to only one of these jobs. Corrado stated that he was not directed either orally or in writing to give preference to white bricklayers over black bricklayers. He denied that Waters and King were not employed because they were black.

■■ The Illinois Fair Employment Practices Act requires that an unfair employment practice be proved by a preponderance of the evidence. (Ill. Rev. Stat. 1971, ch. 48, par. 858(f).) The Supreme Court of Illinois in *Fenyes v. State Employees' Retirement System*, 17 Ill.2d 106, 111-112, 160 N.E.2d 810, 813 (1959), delineated the function of a reviewing court in a case arising under the Administrative Review Act. The court stated:

"Under the Administrative Review Act, the findings of the ad-

ministrative agency on questions of fact are *prima facie* correct. They may be reviewed to determine if they are supported by the evidence, but they can be set aside only if against the manifest weight of the evidence. *Kellogg Switchboard and Supply Corp. v. Department of Revenue,* 14 Ill.2d 434; *Logan v. Civil Service Com.* 3 Ill.2d 81; *Drezner v. Civil Service Com.* 398 Ill. 219.

The judicial function of the reviewing court in such case is comparable to that presented where such court is called upon to determine an issue at law as to whether there is competent evidence to support the judgment of the lower court, and when there is evidence to support the findings of the administrative agency, its decision will be affirmed. *Kellogg Switchboard and Supply Corp. v. Department of Revenue,* 14 Ill.2d 434, 439."

After a perusal of the record in the case at bar, we conclude that the findings of the F.E.P.C. are not contrary to the manifest weight of the evidence.

The plaintiff contends that an unfair employment practice was not established by a preponderance of the evidence and that the trial court erred in finding that the decision and order of the F.E.P.C. was supported by substantial evidence. The issue as framed by the plaintiff is whether the bricklayers who were put to work after Waters and King applied were hired prior to the time of their applications. We agree that this was the salient factual issue that had to be determined but we do not agree with the plaintiff that the unrebutted evidence clearly shows that all bricklayers on the Clark Oil job, except one who was hired for one day, were hired from 1 to 4 weeks prior to the commencement of the job.

■■ The allocation of the burden of proof in an action challenging employment discrimination was well established in *McDonnell Douglas Corp v. Green,* 411 U.S. 792, 802, 36 L.Ed.2d 668, 677, 93 S.Ct. 1817, 1824 (1973). The Supreme Court in referring to the prima facie case that must be initially put forward by the complainant stated:

"This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." (Footnote omitted.)

Once this is done the burden shifts to the employer and it is incumbent upon him to rebut the prima facie case by some legitimate, nondiscrimi-

natory reason for the complainant's rejection. If the employer discharges his burden of proof and meets the prima facie case of discrimination, the burden of proof then shifts back to the complainant and he must establish that the articulated reason for rejection is pretext. (*McDonnell Douglas Corp., supra.*) Applying these rules to the case at bar, it is clear from the record that Waters and King established a prima facie case and that it was not rebutted by A. P. Green.

■■ Waters and King belonged to a racial minority and they applied and were qualified for the Clark Oil job for which A. P. Green was seeking applicants. They were rejected despite their qualifications and the jobs were subsequently filled by white bricklayers. A. P. Green attempted to rebut this prima facie case with the testimony of Mr. Corrado that the men subsequently put to work were promised jobs and thus hired prior to the time Waters and King made their applications. The hearing examiner and Commission rejected this explanation and we cannot conclude that their findings were against the manifest weight of the evidence.

Corrado's testimony does not indicate that a binding agreement was entered into with the white bricklayers who were put to work after Waters and King applied nor were any reciprocal obligations undertaken. The plaintiff contends that the testimony of Willie Pearson corroborates that of Corrado. However, Pearson's statements at the hearing indicate that in regards to him a firm commitment was undertaken by both parties as opposed to the vague promises Corrado made to the white bricklayers. The plaintiff points to the testimony of Stanford Smith where he stated that he knew of no instances involving the hiring of bricklayers who had not applied prior to Waters and King as further evidence that the white bricklayers were merely put to work after Waters and King applied. However, Smith testified that he did not inquire about the date of the applications of each of the bricklayers. As pointed out in the defendants' brief, the testimony of Mr. Smith cited by the plaintiff was in response to a question whether from his conversation with Corrado, he learned about white bricklayers who had not applied before Waters and King. Smith's negative response does not aid the plaintiff in proving that the white bricklayers had been hired prior to the time Waters and King applied.

Corrado did testify that he was not directed to prefer white bricklayers over black bricklayers. However, such statements carry little weight in rebutting charges of discrimination. Racial discrimination in employment is not usually accomplished overtly but rather covertly and by tacit agreements and understandings. Corrado did admit that the

employment structure of A. P. Green was unorganized and such a system can be an easy means of discrimination. After carefully reviewing the record in this case, we agree that an unfair employment practice was proved by a preponderance of the evidence. A. P. Green hired white bricklayers after Waters and King applied and there was no legitimate, non-discriminatory explanation given. We agree with the hearing examiner's conclusion that this constitutes the very essence of discrimination. The trial court did not err in finding that the decision and order of the F.E.P.C. was supported by substantial evidence.

● 5 The decision and order of the F.E.P.C. granted defendants an award of compensatory damages and the plaintiff maintains that the Commission lacks the authority to make such an award. In support of this contention the plaintiff cited *Motorola, Inc. v. Illinois Fair Employment Practices Com.*, 34 Ill.2d 266, 215 N.E.2d 286 (1966), and the Attorney General's Opinion No. S-249, December 29, 1970. Plaintiff stated in its brief, "The issue is whether an award of compensatory damages falls within the scope of the 'further affirmative action' that the Commission may take to 'eliminate the effect of the practice originally complained of.' (Ill. Rev. Stat., ch. 48, ¶ 858[f].)" The portion of the Fair Employment Practices Act cited by the plaintiff, however, contains other important language. The pertinent portion of the statute states:

> "The commissioner or hearing examiner then shall state his recommendations in writing and, if he finds against the respondent, shall issue and cause to be served on such respondent and the complainant an order requiring such respondent to cease and desist from the unfair employment practice complained of, and to take such further affirmative or other actions *with respect to the complainant* as will eliminate the effect of the practice originally complained of." (Emphasis added.) (Ill. Rev. Stat. 1971, ch. 48, par. 858(f).)

It cannot be denied that one of the salient effects of an unfair employment practice on a complainant is the loss of remuneration. This court is, therefore, of the opinion that the F.E.P.C. has the power to award compensatory damages to a successful complainant.

The *Motorola* case is not authority for the plaintiff's contention. In that case compensatory damages were awarded to the complainant but the Circuit Court held that the F.E.P.C. did not have the power to make an award of monetary damages. The Commission did not appeal this ruling and therefore, this issue was not before our supreme court in *Motorola*. This issue as far as we can ascertain is one of first impression.

■■ The Attorney General's opinion cited by the plaintiff is also not persuasive. This opinion dealt with the question of whether the F.E.P.C.

had the power to order payment of attorneys' fees when it determines that such payment will serve the purposes of the Fair Employment Practices Act. The Attorney General rendered a negative ruling based upon *People ex rel. Henderson v. Redfern*, 104 Ill.App.2d 132, 243 N.E.2d 252 (1968), and *Ritter v. Ritter*, 381 Ill. 549, 46 N.E.2d 41 (1943). The Attorney General was of the opinion that since these cases held that attorneys' fees can only be awarded where a statute specifically authorizes their assessment and that since the Fair Employment Practices Act contains no such specific authorization the Commission lacked authority to order payment of attorneys' fees. A distinction, however, can be made between attorneys' fees and compensatory damages. Compensatory damages have always been an integral part of our common law and while not intended to allow a party to profit, their purpose is to make an injured party whole. (*Bimba Manufacturing Co. v. Starz Cylinder Co.*, 119 Ill.App.2d 251, 256 N.E.2d 357 (1969).) However, as stated in *Henderson, supra*, at page 135: "There is no common law or equitable principle allowing attorneys' fees either as costs or damages."

██ The intent of the Fair Employment Practices Act is to insure equal employment opportunity and to rid a complainant of the effects of discrimination which includes the pecuniary loss suffered as a result of the discriminatory practice. The authority to award compensatory damages is within the F.E.P.C.'s power to take affirmative or other actions in respect to the complainant that will eliminate the effects of the unfair employment practice. For the reasons herein stated, the judgment of the Circuit Court of Cook County is affirmed.

Judgment affirmed.

BURMAN and JOHNSON, JJ., concur.