**MIDSTATE OIL COMPANY,
INC., Respondent,**

v.

**MISSOURI COMMISSION ON HUMAN
RIGHTS, et al., Appellants.**

No. 65177.

Supreme Court of Missouri,
En Banc.

Sept. 11, 1984.

Rehearing Denied Nov. 20, 1984.

John Ashcroft, Atty. Gen., Maureen Laflin, Asst. Atty. Gen., Jefferson City, for appellants.

Robert L. Hyder, Hyder & Prenger, Jefferson City, for respondent.

WELLIVER, Judge.

The Missouri Commission on Human Rights (Commission) appeals from a judg-

ment of the Circuit Court of Cole County reversing its decision finding that respondent Midstate Oil Company, Inc., had violated § 296.020.1, RSMo 1978,[1] by terminating the employment of complainant Sherry Schroer upon learning she was pregnant. The Western District reversed and remanded. We ordered the case transferred to clarify the law pertaining to disparate treatment claims brought under § 296.020. We affirm the judgment of the circuit court.

I

This case presents the peculiar situation wherein it is alleged that a female manager of a store owned by respondent, employing only female employees, committed an unlawful act of discrimination by discharging a newly hired employee shortly after learning she was pregnant. Complainant initiated this suit by filing a complaint of discrimination with the Commission on the day she was discharged.[2] When conciliation of the complaint proved unsuccessful, the complaint was set for a hearing before a hearing examiner. The record indicates that the principal witnesses at the hearing were complainant and Sandy Schmitz, the manager of Dad's Derby Station in Jefferson City, a gas station-convenience store owned by respondent. Their testimony reveals little dispute as to the basic facts of the case: Schmitz interviewed and hired complainant to work as an attendant in the store during the 3 p.m. to 11 p.m. shift. Complainant was four months pregnant at the time, but Schmitz was not aware of this fact and complainant did not mention it during the interview. Complainant began work on May 18, 1977, a few days after the interview. Although it was contemplated that

complainant eventually would be the sole attendant on duty during the evening shift, she initially was placed under the supervision of another employee, Linda Speckhals, for training. The evening attendant was expected to perform a variety of functions and tasks. These included operating the cash register, stocking the shelves and coolers with groceries and beverages, mopping the floors, carrying cases of oil, grocery items and other sundries from a shed located behind the store into the store whenever needed and unloading or unpacking cases of grocery items and other inventory when delivered weekly. The record clearly indicates that during the term of complainant's employment she primarily observed the store's operation and performed limited tasks under the close supervision of Speckhals. Complainant never assumed or performed the full range of duties expected of the evening attendant.

On the second or third day of her employment, complainant informed Speckhals she was pregnant, stating that she would soon have to rearrange the candy racks located on a counter "to make room for my belly so I could get through it." Speckhals reported this fact to Schmitz, who in turn questioned complainant. Complainant testified that she admitted being pregnant, but insisted that she informed Schmitz that she remained able to do whatever was expected of her. Schmitz testified that complainant told her that she was not supposed to carry heavy cases and would have to take time off due to her pregnancy. Schmitz informed her that she would discuss the situation with her superiors. Shortly thereafter, on May 24, complainant was terminated.

The hearing examiner issued findings of fact and concluded that respondent had act-

---

1. All subsequent references are to RSMo 1978 unless otherwise indicated.

2. Complainant has played a most passive role in prosecuting this complaint of discrimination. A witness for the Commission testified that complainant failed to respond to repeated efforts to communicate with her while the Commission

was attempting to conciliate her complaint. Contact was made only when an employee of the Commission, as a last step before dismissing the complaint, went to complainant's address and spoke with her directly.

Contrary to common practice, complainant has not intervened in these proceedings.

ed in violation of § 296.020.1(1)(a) and ordered an award of $3,212 in back pay. The Commission adopted the hearing examiner's findings of fact, conclusions and order. Respondent appealed and the circuit court reversed.

## II

■ Complainant based her claim of discrimination of § 296.020.1. It provides:

It shall be unlawful employment practice: (1) For an employer, because of the race, creed, religion, national origin, sex, ancestry, or handicap of any individual:

(a) To fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, creed, color, religion, national origin, sex, ancestry, or handicap.

The pivotal issue in any claim of unlawful discrimination is whether the employer's conduct challenged by the plaintiff was motivated by an invidious purpose or whether it was based on a legitimate and rational consideration. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 800–01, 93 S.Ct. 1817, 1823–24, 36 L.Ed.2d 668 (1973); *Griggs v. Duke Power Co.,* 401 U.S. 424, 430–31, 91 S.Ct. 849, 853–54, 28 L.Ed.2d 158 (1971). To reach an informed conclusion on this issue, federal courts hearing claims alleging unlawful discrimination under Title VII of the Civil Rights Act of 1964 use a system of "burden shifting" to unearth the relevant facts. Under this system, first announced in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), a plaintiff must establish by a preponderance of the evidence a prima facie case of discrimination. If the plaintiff carries this burden, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for its conduct. Should the employer satisfy this burden, the plaintiff must then show by a preponderance of this evidence that the employer's articulated reasons are pretextual. *Id.* at 802–04, 93 S.Ct. at 1824–25. *See also Texas Dep't. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (sex discrimination claim of disparate treatment); *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978). The Commission's findings in the instant case are framed in terms of this approach.

■ Our prior decisions, while not expressly adopting the so-called *McDonnell Douglas* model for the purpose of analyzing claims under § 296.020, have referred to it or tacitly relied on its methodology. *See Barnes Hospital v. Missouri Comm'n on Human Rights,* 661 S.W.2d 534, 538 (Mo. banc 1983); *Percy Kent Bag Co. v. Missouri Comm'n on Human Rights,* 632 S.W.2d 480, 486 (Mo. banc 1982); *General Motors Corp. v. Fair Employment Practices Division,* 574 S.W.2d 394, 397 (Mo. banc 1978). *See also R.T. French Co. v. Springfield Mayor's Comm'n on Human Rights and Community Relations,* 650 S.W.2d 717, 721 (Mo.App.1983); *County of St. Louis v. Brooks,* 614 S.W.2d 283, 287–88 (Mo.App.1981). Courts in a substantial number of states have adopted the *McDonnell Douglas* approach in evaluating the proof in cases brought under state anti-discrimination laws. *See, e.g., Board of Education of the City of Hartford v. Commission on Human Rights and Opportunities,* 176 Conn. 533, 409 A.2d 1013 (1979); *Giles v. Family Court,* 411 A.2d 599 (Del. 1980); *A.P. Green Services Division of Bigelow-Liptak Corp. v. Fair Employment Practices Comm'n,* 19 Ill.App.3d 875, 312 N.E.2d 314 (1974); *Kaster v. Independent School District No. 625,* 284 N.W.2d 362 (Minn.1979); *Peper v. Princeton University Board of Trustees,* 77 N.J. 55, 389 A.2d 465 (1978); *Plumbers & Steamfitters Joint Apprenticeship Committee v. Ohio Civil Rights Comm'n,* 66 Ohio St.2d 192, 421 N.E.2d 128 (1981); *State v. Whitingham School Board,* 138 Vt. 15, 410 A.2d 996 (1979). We believe this approach

offers "a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination." *Furnco Construction Corp., supra,* 438 U.S. at 577, 98 S.Ct. at 2949. Accordingly, we hold that disparate treatment claims under § 296.020 should be tried and evaluated under the methodology set forth in *McDonnell Douglas.*

### III

In reviewing the Commission's decision under the principles set forth in Part II, we are cognizant of our limited scope of review. We must decide whether the Commission, after detached consideration of all the evidence before it, could reasonably have made the findings and order, and whether the decision is arbitrary, capricious, unreasonable or an abuse of discretion. *Kansas City v. Missouri Comm'n on Human Rights,* 632 S.W.2d 488, 490 (Mo. banc 1982); *St. Louis County v. State Tax Comm'n,* 562 S.W.2d 334, 337–38 (Mo. banc 1978); *see Thacker v. Massman Construction Co.,* 247 S.W.2d 623, 627 (Mo. 1952). Section 536.140 of the Missouri Administrative Procedure Act directs that the circuit court shall examine the record to determine whether the decision of the agency is supported by competent and substantial evidence. The test is not whether there is *some* evidence to support the decision below, *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976), but rather whether there is *substantial* evidence. *Ross v. Robb,* 662 S.W.2d 257 (Mo. banc 1983). The latter terms have been defined to "mean competent evidence which, if believed, would have probative force on the issues." *Barnes Hospital, supra,* at 537. It has also been said that substantial evidence "is more than a scintilla, must do more than create a suspicion of the existence of the fact to be established, and means such evidence as a reasonable mind might accept as adequate to support a conclusion." 2 Am. Jur.2d Administrative Law § 688 (1962).

We believe the Commission reasonably could have determined that sufficient evidence was adduced to establish a prima facie case of discrimination. There was evidence that complainant was a member of a class protected by § 296.020.1; that she was discharged; and that a gender-related trait—pregnancy—was a factor in respondent's decision to discharge her. This was sufficient to establish an "inference of discrimination." *Furnco Construction Corp., supra,* 438 U.S. at 577, 98 S.Ct. at 2949. *See also Texas Dep't of Community Affairs, supra,* 450 U.S. at 254, 101 S.Ct. at 1094.

The burden then shifted to respondent to articulate a legitimate, nondiscriminatory reason for complainant's discharge. This we believe respondent did when it adduced evidence that employees in the position for which complainant was hired were expected to routinely carry heavy cartons of oil, groceries and other sundries; that complainant indicated that she was not supposed to lift such items because she was pregnant; and that complainant's unwillingness or inability to perform these tasks rendered her unsuitable for the position.

The Commission concluded that respondent's explanation of complainant's discharge was pretextual. It found that complainant had performed her duties satisfactorily and had not received any negative comments or criticisms about her work; that she had not been bothered by the work and was able to perform all required tasks; and that her doctor knew and approved of the fact that she was working and that Schmitz knew that complainant's doctor had no objections to her working. The Commission further found that "Respondent's decision [to dismiss complainant] was not based on [c]omplainant's inability to perform the duties, but rather was based on obsolete and stereotyped ideas about what tasks a pregnant woman should be performing."

After a careful review of the entire record, we are left with the firm

conviction that the circuit court did not err in concluding that the Commission's finding of pretext is not supported by substantial evidence. The Commission's finding that complainant was able to perform all required tasks is based on sheer speculation inasmuch as complainant never fully assumed her assigned duties and no proper medical evidence of complainant's abilities was adduced. The Commission's finding that complainant performed her duties satisfactorily and without criticism from her employer is rendered meaningless by the fact that complainant did little more than observe during the period she was employed by respondent. Neither the statute setting forth our scope of review, § 536.-140, nor our case law require us to defer to the Commission's gratuitous commentary regarding what is deemed to be respondent's "obsolete and stereotyped ideas." Though the record is sketchy, possibly because of a somewhat reluctant complainant, we believe an impartial evaluation of the evidence shows that respondent dismissed complainant after concluding she was unable to perform the various tasks expected of the evening attendant.

 Nothing in § 296.020.1 required respondent to retain complainant as an employee because of the fact that she was pregnant. The statute prohibits purposeful discrimination on the basis of one's "race, creed, color, religion, national origin, sex, ancestry, or handicap," but it does not forbid an employer to make an employment decision that adversely affects a person within a protected class so long as that decision was motivated by rational and nondiscriminatory considerations reasonably related to the employer's business operation. The competent evidence in the record will not support a finding that respondent's articulated reasons for dismissing complainant were pretextual. We conclude that the Commission erred when it held that respondent violated § 296.020.1.

We affirm the judgment of the circuit court.

HIGGINS, BILLINGS and DONNELLY, JJ., concur.

BLACKMAR, J., dissents in separate opinion filed.

RENDLEN, C.J., and GUNN, J., dissent and concur in separate dissenting opinion of BLACKMAR, J.

BLACKMAR, Judge, dissenting opinion.

My examination of the record convinces me that the Commission's finding of sex discrimination is supported by competent and substantial evidence on the record as a whole.

The principal opinion is flawed because it relies on the employer's evidence while overlooking and failing to mention the contrary evidence, and apparently accepts as true and established evidence which the trier of the fact did not have to credit. Inasmuch as no issue was presented to us as to the amount of damages, I would sustain the Commission's decision.

### I.

The overriding purpose of § 296.020, RSMo 1978 is to allow persons to make their way in the workaday world free from discrimination on account of sex, race, or other personal circumstances as detailed in the text. This remedial statute should be liberally construed in line with its purpose. We should have recourse to the decisions of federal courts and of courts of other states construing similar statutes, but must determine the intent of our own legislature and may freely discount extraneous holdings which do not appear to be in line with the purpose of our statute.[1]

We should hold, emphatically, that discrimination on account of pregnancy is sex

---

1. The language of Title VII appearing in 42 U.S.C. § 2000e–2 is virtually identical to the language of § 296.020. In 1978, with the Preg-

nancy Discrimination Amendment, Congress supplemented the definitional section of Title VII to include discrimination "on the basis of

discrimination within the contemplation of our statute. Pregnancy, of course, is a condition peculiar to women. Pregnant women often have to provide all or part of their support. There have been disputes over the years as to whether and how long a pregnant woman should be allowed to work, with a tendency in recent years to allow much more freedom. If the right to work during pregnancy is unduly restricted women suffer discrimination vis-a-vis men, and this is so even when a terminated pregnant employee is replaced by a female.[2] An employer who contends that certain work is not suitable for a pregnant woman should bear the burden of so proving. The bare feeling that certain work should not be done by one in a delicate condition is not enough. The text of our statute is consistent with the construction I advocate, and the regulations of the Human Relations Commission properly perceive the legislative intent.[3] Any narrow or artificial distinction would be subversive of the purpose of the statute. The principal opinion may not be in disagreement on this basic proposition, but the point requires more emphasis. The principal opinion misapplies and perverts *McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

I quite agree with the principal opinion that we may make use of the analysis set forth in that case which holds that a qualified person may make out a prima facie case of discrimination by demonstrating that he or she is a member of the class of persons protected by an anti-discrimination statute, and is subjected to adverse action while others are treated more favorably.[4] The analysis has little applicability when there is direct evidence of discrimination. It rather is designed to permit a claimant to make a case based on circumstantial evidence, so as to require the employer to demonstrate the actual cause of termination, and is of primary utility when direct evidence is lacking.

This record is replete with direct evidence of discriminatory treatment of the claimant because of her pregnancy. The

---

pregnancy, childbirth or related medical condition." The House Report clearly indicates that one of the specific purposes of the amendment is to overrule the Supreme Court's decision in *General Electric Co. v. Gilbert,* 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976), where the Court held that pregnancy-based distinctions under an employee disability insurance plan did not fall within Title VII's prohibition against sex-based discrimination. H.R.Rep. No. 948, 95th Cong., 2d Sess. 2–3, reprinted in 1978 U.S. Code Cong. & Ad.News 4749, 4750–51. The Report also adopts the view that the dissenting justices in *Gilbert* correctly interpreted the Act, and specifically cites to Justice Stevens' statement that excluding pregnancy-based disabilities from coverage is sexually discriminatory because "it is the capacity to become pregnant which primarily differentiates the female from the male." *Id.* at 4750. Consistent with my position, and not aided by the 1978 amendment, are *Nashville Gas Co. v. Satty,* 434 U.S. 136, 98 S.Ct. 347, 54 L.Ed.2d 356 (1977) and *Doe v. Osteopathic Hospital,* 333 F.Supp. 1357 (D.Kan. 1971).

2. For one thing, the employer would be obliged by § 296.020 to consider male applicants for the position made vacant by the claimant's discharge. *See Harmon v. San Diego County,* 477 F.Supp. 1084 (S.D.Cal.1979).

3. 4 CSR 180–3.040(16) provides:
 A written or unwritten employment policy or practice which excludes from employment applicants or employees because of pregnancy is in prima facie violation of chapter 296 RSMo (1978) and may be justified only upon a showing of business necessity.

4. The *McDonnell Douglas* rule is stated by Justice Powell as follows (l.c. 802):
 The complainant ... must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications....
 The appended footnote makes it clear that there are other ways of making out a prima facie case.

investigator for the Commission testified that the manager told her that her superior had instructed her to discharge the claimant, after her pregnancy had been discovered, because he was afraid of "claims." The manager also told the investigator that she preferred men in the position of night manager. The claimant testified as follows:

Q Okay. Was there any further conversation about your pregnancy that day?

A No.

Q When was the next time you talked to somebody about it?

A The next day. I asked Sandy if I was going to be able to keep my job and she said she didn't know yet, that Jake hadn't told her yet. And then the next day after that she told me that Jake said they couldn't use me.

Q Did she say specifically why?

A Yes, because I was pregnant.

\* \* \* \* \* \*

Q Six days later on May the 24th then you state that you were fired. Could you tell us what the conversation was?

A Sandy Schmitz told me that she had spoken with Jake Steinmetz [5] and he said that since I was pregnant, he didn't want me working there.

\* \* \* \* \* \*

The Commission had the right to accept the testimony just detailed as admissions by the employer's authorized agent who had hired the claimant and who was the employer's sole spokesman in her termination. It could disregard or discredit any contrary evidence.

## II.

Because the evidence clearly supports the conclusion that the claimant was discharged on account of her pregnancy, the truth and adequacy of any explanation or justification are for the trier of the fact. There is no occasion here to answer a question which arises frequently in circumstantial cases, as to whether the employer's uncontroverted evidence may be sufficient to overcome a prima facie circumstantial case previously made out under the *McDonnell Douglas* rule, so as to entitle the employer to a finding as matter of law. The Commission's prima facie case was based on direct evidence, and could not be destroyed by the employer's evidence. The countervailing evidence, at most, made out a question of fact for the Commission's resolution. *See, Texas Department Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), emphasizing that, even in a circumstantial case, a fact issue may be presented as to the credibility of the employer's explanation.

We do not have to enter into an analysis of such questions as "Bona Fide Occupational Qualification" (BFOQ) or "business necessity." Nor do we have to probe the distinction between "discriminatory treatment" and "discriminatory impact" cases. The issue before us is whether a particular person suffered discrimination because of her sex. Although the Commission might well have found from the evidence that there was a purpose of discriminating against pregnant women generally, and therefore against women as a class, we need consider only the grievant's situation and the employer's attempt at justification, which the principal opinion found to be sufficient.

The opinion sets forth evidence consistent with its conclusion, while incredibly ignoring the abundant evidence to the contrary. I cannot agree that there is "little dispute as to the basic facts of the case." Anybody who reads the transcript will readily perceive the substantial variances.

The principal opinion reads as follows:

---

**5.** It appears that the claimant did not state the "owner's" name correctly. This circumstance is for the Commission to weigh.

The burden then shifted to respondent to articulate a legitimate, nondiscriminatory reason for complainant's discharge. This respondent did when it adduced evidence that employees in the position for which complainant was hired were expected to routinely carry heavy cartons of oil, groceries and other sundries; that complainant indicated that she was not supposed to lift such items because she was pregnant; and that complainant's unwillingness or inability to perform these tasks rendered her unsuitable for the position.

Every element of this asserted justification was disputed by the claimant's testimony, which I set forth at length so that the record showing will be clear to all.

Q Okay. Tell us precisely what you did in order to stock the coolers when you did stock the coolers?

A Go to the back room and get the warm beer out of the cases—

\* \* \* \* \* \*

A. —and bring it up to the front of the station and put it in the back of the coolers.

Q Now how much warm be—how much beer at a time would you carry?

A Two six packs or a case or—

Q Okay.

A. —whatever I needed or felt I have the time to do at the time.

\* \* \* \* \* \*

Q Did you experience any difficulty in any of the physical aspects of the job?

A No.

Q At any time were you ever asked to do anything that you refused to do?

A No.

\* \* \* \* \* \*

Q Okay. Did you have to do anything more strenuous the second day than you did the first day?

A No.

Q Did you experience any difficulty with any of the physical aspects of the job?

A No.

\* \* \* \* \* \*

[Cross Examination]

Q I'll ask you if you didn't tell her that you ought not to be doing things of that kind in substance?

A No.

Q Did you say anything like that to her?

A No.

Q Did you talk about the going upon on a ladder to secure stock from the higher shelves?

A No.

\* \* \* \* \* \*

Q And you're saying that your pregnancy had nothing to do with your ability to climb stairs, to fill counters, display shelves or to do the other work which we've outlined here including carrying a substantial—objects of substantial weight?

A I was never told I had to carry anything of substantial weight.

Q Now I believe you testified that—to start with that you knew that you would have to carry beer to the coolers and oil to the oil racks and merchandise to the shelves?

A Well, I don't consider that substantial weight. It—the—there was no reason that I or my doctor knew of why I couldn't do it.

Q And I'll ask you if you didn't tell Mrs. Smith before you were discharged that you ought not to be doing that type of work in your condition, in those words?

A No, I didn't.

The question of what the claimant said about her capabilities, then, is wholly a fact

question. The Commission had every right to disbelieve the manager's testimony as to what the claimant told her about her limitations. The principal opinion inexcusably ignores the claimant's testimony.

The flaws are compounded by the statements that "complainant never assumed or performed the full range of duties expected of the evening attendant," "complainant never fully assumed her assigned duties," and "complainant did little more than observe during the period she was employed by respondent." I cannot find a single line in the transcript which supports these assertions. The claimant testified that, even on the first day of work, she "ran the cash register, kept the coolers stocked, took empty coke bottles out and mopped the floor." These are the substantial duties of the job which the manager detailed in her testimony. The manager admitted that the claimant might have been left in sole charge of the station during her brief employment.

The employer's evidence as to the required lifting is scanty and unpersuasive. There was no evidence as to the weight of the cartons of oil, soda and beer that were involved and no indication that an employee who found an entire case or carton too heavy, whether pregnant or not, could not split up the load and make extra trips. Time pressure apparently was not heavy in stocking the racks and shelves, during the evening hours. There is also a duty on the part of the employer to explore alternative possibilities before indulging in out and out sex discrimination.[6] The claimant, furthermore, testified that she had no trouble lifting the cartons as required, and never told the manager that she could not.

In stating that "no proper medical evidence of complainant's abilities was adduced," the principal opinion engages in an unwarranted shifting of the burden of proof. The claimant testified that she had discussed her new job with her doctor and had received clearance. She should not be required to go beyond this. The Commission would be justified in assuming that she was anxious to preserve her own health and that of her unborn child, that she sought medical advice for these purposes, and that she correctly reported and followed the doctor's advice. Proceedings to enforce the anti-discrimination statutes should not be made unduly complicated by requiring the claimant to produce medical evidence. The burden should be on the employer to demonstrate that an otherwise qualified employee, who is shown to be a victim of discrimination, is physically incapable of doing the work she was hired to do. This employer did not offer evidence sufficient to raise an issue of her incapacity.

The principal opinion fails further in saying that the Commission's finding of pretext is lacking in evidentiary support. The manager gave one version of the facts to the claimant when she announced the discharge, told a different story to the Commission's investigator, and then came forth with still another variation at the hearing. The manager did not mention to the investigator any statements by the claimant about limitations on her capacity to do the job. This suggests afterthought. The Commission could have found that the investigator and the claimant gave accurate testimony about what the manager told them and might therefore conclude that the manager's explanation given at the hearing represented afterthought and pretext.

I agree that nothing in § 296.020.1 requires respondent to retain an employee otherwise subject to termination because she was pregnant. The employer, however, engaged in sex discrimination by discharging a female employee whose preg-

---

6. Application of the "less discriminatory alternative" doctrine in this case stems from the Supreme Court's observation in *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 425, 95 S.Ct. 2362, 2375, 45 L.Ed.2d 280 (1975), that a standard which has no discriminatory effect and serves the employer's legitimate purposes must be used in preference to a standard with a more dis-criminatory effect. *See also Hayes v. Shelby Memorial Hospital,* 726 F.2d 1543 at 1550–51 (1984) where the 11th Circuit found that a hospital's firing of a pregnant x-ray technician was unjustifiable because she could have been assigned to other duties not involving constant exposure to x-rays.

**852**

nancy constitutes a substantial factor in the termination. If it is the purpose of the principal opinion to attack this premise it should do so explicitly.

The principal opinion belies the record. I have quoted extensively to demonstrate that this is so. Clues to the error in the approach of the principal opinion are found in such statements as "careful review of the entire record," "impartial evaluation of the evidence" and "the circuit court did not err." The legislature has established the Commission as the basic fact finder. The presumption is in favor of the decision of the Commission, not that of the circuit court. The Commission is the agency appointed by the legislature for making the initial decision on employment discrimination matters. The courts must be careful to accord the Commission the deference the law intends, and should set aside its factual findings only when they are clearly unsupportable.[7] The deference to be accorded to the fact finding Commission is similar to that which a jury has, or that which is afforded the trial court under *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976).

The principal opinion simply substitutes this Court's judgment for the judgment of the fact-finder established by law. In so doing it runs contrary to the very cases it cites on the scope of administrative review. The opinion indicates either suspicion of the Commission as a fact-finder, or lack of sympathy with the basic purpose of the anti-discrimination statutes. Our duty, however, is to apply the law the legislature gives us, and to respect the authority of established tribunals.

The circuit court plainly erred in setting aside the decision of the Commission. Its judgment should be reversed and the case remanded with directions to affirm the decision and order compliance.

---

**7.** The role of the reviewing court is defined in the Missouri Constitution, art. V, § 18 and provides that review of a judicial or quasi judicial decision which affects private rights "shall include whether the same are supported by competent and substantial evidence upon the whole record." As stated by the Court in *Percy Kent Bag Co. v. Missouri Commission on Human Rights*, 632 S.W.2d 480, 487 (Mo. banc 1982),

## SUPPLEMENTAL MEMORANDUM ON MOTION FOR REHEARING

BLACKMAR, District Judge.

It is inconceivable to me that the Court would allow its opinion to stand in the face of *Hansome v. Northwestern Cooperage Company*, No. 65865, decided today. I had always assumed that the Missouri Commission on Human Rights had authority, similar to the authority possessed by a jury, to determine questions of credibility. The Court's opinion reversed a decision of the Commission by giving conclusive effect to controverted evidence, while ignoring the claimant's evidence.

---

"[a]lthough this court 'may have decided the case differently as an original proposition, we, as well as the trial court, must defer to the administrative tribunal's findings of fact.'" The only time we may substitute our judgment is when the evidence adduced at the administrative hearing is clearly arbitrary, capricious or an abuse of discretion.