**KANSAS CITY, Missouri, Appellant,**

v.

**MISSOURI COMMISSION ON HUMAN RIGHTS, Respondent,**

and

**Marialice Estopare and Mary Breshears, Complainant-Intervenors.**

No. 62678.

Supreme Court of Missouri, En Banc.

May 11, 1982.

Aaron A. Wilson, City Atty., Dan G. Jackson, III, Asst. City Atty., Kansas City, for appellant.

John Ashcroft, Atty. Gen., Thomas G. Auffenberg, Asst. Atty. Gen., Jefferson City, for respondent.

Byron Neal Fox, Kansas City, for complainant-intervenors.

MORGAN, Judge.

This contested case comes before the Court upon appeal by appellant (City of Kansas City) seeking review of a final decision of the Missouri Commission on Human Rights (Commission) which found appellant in violation of Chapter 296, RSMo 1978.[1] Specifically, the Commission found appellant to be practicing sex discrimination by paying Marialice Estopare and Mary Breshears, complainant-intervenor-respondents herein, at a rate less than males for jobs "shown to be substantially equal in regard to effort, skill and responsibility under similar working conditions...."[2]

1. All statutory references are to RSMo 1978 unless noted otherwise.

2. The decision as entered by the Commission ordered the City to "cease and desist" and to pay, as "backpay," the amount of $8,390.17 plus interest to Estopare and $8,345.17 plus interest to Breshears.

Initially, it must be noted that the nature of our review is limited to determining whether the Commission's findings are supported by competent and substantial evidence on the record as a whole; whether the Commission's decision is arbitrary, capricious or unreasonable; whether the decision involves an abuse of discretion; whether, for any other reason, the decision is unauthorized by law; or those other grounds as found in § 536.140.2.[3] *See M. V. Marine Co. v. State Tax Commission of Missouri*, 606 S.W.2d 644 (Mo. banc 1980); Mo.Const.art. VI, § 18; Rule 100.07(b). The Court may not substitute its judgment for that of the Commission, and must defer to the Commission's findings of fact. *McNeal v. Bequette*, 571 S.W.2d 657 (Mo. App.1978). Yet, where the decision is clearly based upon an interpretation or application of law, the Commission's conclusions of law, and the decisions based thereon, "are matters for independent judgment of the reviewing court." *St. Louis County v. State Tax Commission*, 562 S.W.2d 334 (Mo. banc 1978). In other words, the decision of the administrative body on a question of law does not preclude, restrict or control review of the issue by the Court. *First Bank of Commerce v. Labor and Industrial Relations Commission of Missouri*, 612 S.W.2d 39, 42 (Mo.App.1981).

Missouri's statute, 296.020(4), which defines unlawful employment practices, excludes from coverage differences in employment compensation, terms, conditions or privileges of employment required or permitted by sec. 6(d) of the federal Fair Labor Standards Act of 1938,[4] as amended. This statute, commonly referred to as the "Equal Pay Act," sets forth the elements to be considered in determining whether an unlawful employment practice has occurred.

Nevertheless, the parties correctly recognize that the substantial body of federal case law in this area, in conjunction with the interpretations of § 6(d) developed by the Secretary of Labor,[5] are helpful in deciding the issues presented. As the Commission has relied almost exclusively on the federal "materials" noted herein within its findings of fact and law, we do not feel constrained to rely solely on the sparse interpretations of our own Chapter 296, and thus will place proper weight on decisions from our federal courts.

When determining whether there has been a violation of the Equal Pay Act, and consequently Chapter 296, the burden rests with complainants and the Commission to first establish a sufficient degree of equality between the jobs being compared. The pertinent passage of § 6(d) couches this equality as ". . . equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions. . . ." This test has been construed as requiring a *substantial equality*, and not that the jobs actually be identical. *Shultz v. Wheaton Glass Co.*, 421 F.2d 259, 9 F.E.P. Cas. 502 (3rd Cir. 1970); *Shultz v. American Can Co.-Dixie Products*, 424 F.2d 356, 9 F.E.P. Cas. 524, 2 E.P.D. ¶ 10149 (8th Cir. 1970) conformed to *Hodgson v. American Can Co.*, 314 F.Supp. 1192, 2 E.P.D. ¶ 10224 (D.C.Ark.1970), *on reh. Hodgson v. American Can Co., Dixie Products*, 317 F.Supp. 152, 3 E.P.D. ¶ 8027 (D.C.Ark.1971), aff'd in part and rev'd in part *Hodgson v. American Can Co.*, 440 F.2d 916, 9 F.E.P. Cas. 589, 3 E.P.D. ¶ 8171 (8th Cir. 1971). However, skill, effort and responsibility are separate tests, and each must be met in order for the Fair Labor Standards Act [and our own

---

3. "2. The inquiry may extend to a determination of whether the action of the agency

 (1) Is in violation of constitutional provisions;

 (2) Is in excess of the statutory authority or jurisdiction of the agency;

 (3) Is unsupported by competent and substantial evidence upon the whole record;

 (4) Is, for any other reason, unauthorized by law;

 (5) Is made upon unlawful procedure or without a fair trial;

 (6) Is arbitrary, capricious or unreasonable;

 (7) Involves an abuse of discretion."

4. 29 U.S.C. § 206.

5. 29 C.F.R. 800.100, *et seq.*

Chapter 296] to apply. *Dunlop v. General Electric Co.*, 401 F.Supp. 1353, 20 F.E.P. Cas. 847 (D.C.Va.1975).[6]

■ The jobs compared in the case before us are Deputy Court Clerk I and Bailiff in the Municipal Court of Kansas City. Both are established positions within the court system of appellant and subject to a written job description made a part of the record herein. However, it is the actual job requirements which control for purposes of job equality, and not the written job descriptions. *Hodgson v. Brookhaven General Hospital*, 436 F.2d 719, 9 F.E.P.Cas. 579 (5th Cir. 1970); *Wirtz v. Midwest Mfg. Corp.*, 9 E.P.Cas. 483 (D.C.Ill.1968); 29 C.F.R. § 800.121. The evidence showed that since the positions were made a part of appellant's job classification system, all Deputy Court Clerks I had been women, and all bailiffs had been men.[7]

Since the Commission found the jobs to be substantially equal, it goes without saying that the clerk and bailiff jobs necessarily were found to be substantially equal in skill, effort, responsibility and working conditions. However, upon our review of the whole record as mandated by statute, we must question the conclusions of the Commission.

One specific finding stands out among the rest. That finding deals with "responsibility." Set out as found by the Commission, the offending paragraphs read:

19. "Responsibility" as set out by the Secretary of Labor, 29 CFR 180.129, is concerned with the degree of accountability required in the performance of the job, with emphasis on the importance of the job obligation.

20. The job responsibility of the bailiff centers mainly around maintaining order so the court docket can proceed smoothly. The bailiff also assists in filling out forms, escorting prisoners to vari-

ous places and fulfilling other functions as required by the particular judge. The bailiff, if a question arises, seeks assistance first from the court clerk. The bailiff therefore has less supervisory responsibility than the court clerk even though the Respondents' job description shows otherwise.

21. The court clerks have responsibility for the court docket which includes making sure prisoners are present, order is kept, the forms are filled out and the judges' directions are carried out. The clerks have supervisory responsibility over the bailiffs since the bailiffs come to them with questions. There was no evidence that the clerks sought advice from the bailiffs.

22. Based upon the foregoing paragraph it is found that the bailiff and clerk had at least equal responsibility with the clerk exercising more responsibility in the hierarchy of the courtroom.

This finding, while appearing complete on its face, is far too limited when compared to the evidence found within the whole record. The testimony elicited of respondent's own witnesses at the hearing on this case clearly demonstrates that one of the requirements of the bailiff was the ability to preserve the order and security of a municipal courtroom. This requirement is found in the written job description, and is also fairly implied from the job qualification requiring the bailiff to be a commissioned police officer. Mr. Duyane Parker, Assistant Court Administrator responsible for the hiring and promotion of the positions in question, testified on cross-examination that the Deputy Court Clerk I position did not require the applicant/employee to pass a physical examination—which was later testified to as being the same examination as must be completed by a firefighter, Liquor Control or Auditor's Office investigator, or airport

6. Complainants Estopare and Breshears had each filed separate complaints with the federal Equal Employment Opportunity Commission prior to filing their complaints with the Missouri Commission. The federal Equal Employment Opportunity Commission after investigation found no reasonable cause to support complainants' allegations.

7. Since this case was presented to the Commission, women have been employed as bailiffs within appellant's municipal court system.

safety officer—while the Bailiff applicant/employee was required to pass such a test. His explanation for the requirement of a physical examination was that bailiffs "in certain cases ... have to defend themselves with an excited person, a person trying to escape, or a person under the influence of alcohol or drugs." Likewise is the testimony of respondent's witnesses: Mr. William Renfro, who testified that he equated the bailiff's duties with keeping law and order in the courtroom; and Mr. Jack Schrimsher, Acting City Prosecutor for Kansas City, who testified that comparing the responsibilities of clerk to bailiff was like comparing apples to oranges in that a bailiff "is expected to handle whatever you want to call rowdy prisoners...." Further to this point is the evidence elicited from respondents' witness David McConnell, who had previously been a courtroom prosecutor, then Chief Assistant Prosecutor, in Kansas City. Mr. McConnell said that the bailiff "is charged with taking prisoners to a jail tank. Now, that can become a hairy situation and I have seen it become such and sometimes the police have to be called that are present in the courtroom to assist the bailiff."

■ Thus, even if it be assumed that the Deputy Clerks may have "supervisory responsibility" over the bailiffs, or may exercise more responsibility "in the hierarchy of the courtroom," the findings of the Commission inadvertently disregard the matter of the primary responsibility of the bailiff, i.e., to provide order and security in the municipal courtroom. That responsibility for providing security may justify the payment of higher wages than to those performing otherwise substantially equal work cannot be questioned. *Shultz v. Kentucky Baptist Hosp.*, 62 CCH Lab.Cas. ¶ 32,296 (D.C.Ky.1969). *See also* Landau and Dunahoo, Sex Discrimination in Employment: A Survey of State and Federal Remedies, 20 Drake Law Review 419, 517 (1971); Winslow, Sex Discrimination in Employment: Current Federal Practice, 24 Drake Law Review 515, 590 (1975); [8] Sullivan, The Equal Pay Act of 1963: Making and Breaking a Prima Facie Case, 31 Arkansas Law Review 545, 569 (1978).

■ Ostensibly, the Commission equated the bailiff's order/security duties with those duties of the deputy clerk, as designated in ¶ 21 ("The court clerks have responsibility ... which includes making sure ... order is kept ...."). However, if that is the basis upon which these two positions are found *substantially equal,* the finding is not grounded upon competent and substantial evidence. The record provided the court is satiated with testimony that the. Deputy Clerks did not provide the security within the courtroom, and that if they did at times perform duties similar to some of those of the bailiff, they were performed "not as a general rule", "on occasion", "when the emergency arises", "occasionally", "in emergency situations" or "not very much". Just as federal case law has made clear that incidental or occasional *unequal* work will not render otherwise *equal* jobs *unequal, Shultz v. Corning Glass Works* (D.C.N.Y. 1970) 319 F.Supp. 1161, 9 F.E.P.Cas. 538, 2 E.P.D. P. 10221, amd. *Hodgson v. Corning Glass Works* (D.C.N.Y.1971) 330 F.Supp. 46, 9 F.E.P.Cas. 665, 3 E.P.D. P. 8315, mod. *Hodgson v. Corning Glass Works* (2C 1973) 474 F.2d 226, 9 F.E.P.Cas. 806, 5 E.P.D.P. 8453, affd. *Corning Glass Works v. Brennan* (1974) 417 U.S. 188, 94 S.Ct. 2223, 41 L.Ed.2d 1, 9 F.E.P.Cas. 919, 7 E.P.D.P. 9374B; *Shultz v. Hayes Indus. Inc.*, 2 EPD ¶ 10,150, 62 CCH Lab.Cas. ¶ 32,327 (D.C. Ohio 1970), logic compels us to hold the converse worthy of similar support: incidental or occasional *equal* work will not render otherwise *unequal* jobs *equal.* The Secretary of Labor has recognized this in his guidelines, 29 CFR § 800.122, which read in pertinent part: "Insubstantial or

---

**8.** "Proof that male employees (especially orderlies in psychiatric or geriatric wards) perform the essential function of providing protection from disturbed or violent patients as a significant part of their job has been held to justify the payment of higher wages than those paid to aides otherwise performing substantially equal work." *Winslow, supra,* at 590 (footnote omitted)

minor differences in the degree of skill, or effort, or responsibility required for the performance of jobs will not render the equal pay standard inapplicable. On the other hand, substantial differences, . . . will ordinarily demonstrate an inequality as between the jobs justifying differences in pay."

 Accordingly, should the Commission's final decision regarding responsibility be based merely upon "supervisory" responsibility, we hold the finding to be unreasonable and arbitrary in that it failed to consider the bailiffs' responsibility for courtroom control and security testified to and inherent in his position. The bailiffs' security responsibilities are far more than an incidental or occasional matter and are not readily separable from his other tasks, as security is an ongoing and continuing burden with a potential for violence. Should the Commission's final decision be premised upon a finding that both deputy clerks I and bailiffs had substantially equal responsibility for keeping order and security within the municipal courtroom, we hold the finding to be unsupported by competent and substantial evidence. In either instance, the Commission has not shown the jobs to be substantially equal with respect to job responsibility, and it erred in holding otherwise.

The judgment is reversed and the cause is remanded for entry of a new judgment consistent with this opinion.

All concur.