AMERICAN POSTAL WORKERS UNION, SAN FRANCISCO LOCAL; Alice Lindstrom; Robert Davis, Plaintiffs-Appellees,

v.

POSTMASTER GENERAL, Defendant-Appellant.

No. 84–2388.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 15, 1985.

Decided Jan. 31, 1986.

W. Daniel Boone, Van Bourg, Allen, Weinberg & Roger, San Francisco, Cal., for plaintiffs-appellees.

John F. Cordes, Harold J. Krent, Dept. of Justice, Washington, D.C., for defendant-appellant.

Before CHOY, Senior Circuit Judge, FARRIS, Circuit Judge, and HATFIELD, District Judge.*

PER CURIAM:

Section 703(a)(1) of the Civil Rights Act of 1964, Title VII, 42 U.S.C. § 2000e–2(a)(1) makes it an unlawful employment practice for an employer to discriminate against an employee or prospective employee on the basis of his or her religion. Section 701(j) of Title VII, 42 U.S.C. § 2000e(j) (1970 ed., Supp. V) states in turn:

> The term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.

The issue presented by the present case is the extent of an employer's obligation under Title VII to accommodate an employee whose religious beliefs prohibit him from performing a particular task attendant his employment position.

FACTUAL BACKGROUND

In 1980, the Postal Service began accepting draft registration forms pursuant to an agreement with the Selective Service System. The Postal Service required window clerks to distribute, partially verify, and collect forms from men who went to the Post Office to register.[1] For a period of time, the Postal Service allowed window clerks with a religious precept that forbade them from processing draft forms to simply refer draft registrants to other window clerks willing to process the forms.[2]

A revised regulation was promulgated by the Postal Service, however, which required all window clerks to process draft registration forms. Under the revision, a window clerk with a religious conflict was required to exercise his rights under an existing collective bargaining agreement, and transfer to a position that did not require processing draft registration forms. The Postal Service refused to make any other accommodation to the religious need of the affected window clerks.

Alice Lindstrom and Robert Davis were two window clerks whose religious beliefs prohibited them from processing draft registration forms. Pursuant to the directive of the Postal Service, Lindstrom transferred, under protest, from her position as a window clerk to the position of distribution clerk to avoid dismissal. Davis chose, instead, to keep his window clerk position and process draft registration forms under protest.

Lindstrom, Davis, and the American Postal Workers Union filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), contending that the Postal Service's refusal to allow affected window clerks to refer draft registrants to another window clerk violated its obligation under Title VII. The EEOC found that the Postal Service had violated Title VII.

---

* Honorable Paul G. Hatfield, United States District Judge for the District of Montana, sitting by designation.

1. When a registrant registered for the draft, the postal clerk gave him a registration form to complete. The registrant submitted his completed form to the next available postal clerk, who checked for blank spaces, asked for identification, and verified the registrant's name and birth date. If the registrant had any substantive question, the clerk referred him to the Selective Service.

2. Lindstrom, Davis, and the Union note that their co-employees did not object to this system, that the registration process was not cumbersome, that few registrants came to the post office at which they worked, and that customers were regularly referred to designated windows for other reasons.

When the Postal Service notified Lindstrom and Davis that it would not comply with the EEOC's decision, Lindstrom, Davis, and the Union brought this action in district court. Upon cross motions for summary judgment, the district court held that the Postal Service had violated Title VII. The Postmaster General appeals that decision.

DISCUSSION

Lindstrom, Davis, and the American Postal Workers Union contend that the Postal Service was required to allow any window clerk, whose religion prohibited him from processing draft registration forms, to choose any accommodation that did not cause the Postal Service "undue hardship." The Postal Service argues that it satisfied the duty imposed by Title VII when it allowed Lindstrom and Davis to transfer to a job which did not require them to process the draft registration forms.

In reaching its decision, the district court assumed, without deciding, that the Postal Service's offer of transfer constituted a reasonable accommodation of the religious beliefs of Lindstrom and Davis. Nonetheless, because Lindstrom and Davis viewed the transfer as inadequate, the district court concluded that the Postal Service was bound to accept the alternate accommodation proposed by Lindstrom and Davis, unless implementation of that accommodation would constitute "undue hardship." Having concluded that the Postal Service would not have suffered "undue hardship" by allowing Lindstrom and Davis to simply refer draft registrants to other window clerks, the district court held that the Postal Service had not satisfied its duty under Title VII. We reject the district court's analysis.

■ The Postal Service concedes that Lindstrom and Davis established a *prima facie* case of religious discrimination by demonstrating that they held a bona fide religious belief which prohibited them from processing draft registration forms. Consequently, the burden rested upon the Postal Service to prove that it met its obligation under Title VII to accommodate the reli-

gious beliefs of Lindstrom and Davis. *See Trans World Airlines v. Hardison,* 432 U.S. 63, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1975).

■ Title VII requires an employer to reasonably accommodate the religious beliefs and practices of its employees, short of incurring an "undue hardship." *See, Trans World Airlines v. Hardison,* 432 U.S. at 75, 97 S.Ct. at 2272. As the Supreme Court stated in *Hardison,* however, the definition of "religion" set forth in Section 701(j) of Title VII fails to provide any guidance for determining the degree of accommodation that is required. 432 U.S. at 75. The "reach" of the obligation has simply never been spelled out by Congress or the EEOC. The determination of when the "reasonable accommodation" requirement has been met, and the circumstances under which a particular accommodation may cause "undue hardship," must be made in the particular factual context of each case. *Anderson v. General Dynamics Convair,* 589 F.2d 397, 400 (9th Cir.), *cert. denied, sub nom. International Assoc. of Machinists and Aerospace Workers of America v. Anderson,* 442 U.S. 921, 99 S.Ct. 2848, 61 L.Ed.2d 290 (1979).

The seminal cases in which we addressed the reach of the obligation are the companion cases of *Anderson v. General Dynamics Convair Aerospace Division, supra,* and *Burns v. Southern Pacific Transportation Co.,* 589 F.2d 403 (9th Cir.1979), decided by us in the wake of *Hardison.* Both *Anderson* and *Burns* centered on the degree of accommodation which an employer and union were obliged to afford an employee/member, whose religious precepts prohibited him from belonging to a union or paying union dues. *Burns* and *Anderson* afforded us the opportunity to establish a general rule with respect to the situation where an employer and employee fail to reach an accommodation which would eliminate that employee's bona fide religious conflict.

In *Anderson,* we stated that once an employee establishes a *prima facie* case of

religious discrimination, the burden shifts to the employer to prove that it made good faith efforts to accommodate that employee's religious belief. *Anderson,* 589 F.2d at 401. If the employer's efforts fail to eliminate the employee's religious conflict, the burden remains upon the employer to establish that it is unable to reasonably accommodate those beliefs without "undue hardship." *Anderson,* 589 F.2d at 401.

The decision in *Burns* further refined the rule established in *Anderson.* Recognizing that it is incumbent upon the employer to undertake some initial steps to reach a reasonable accommodation of the particular religious belief at issue, we stated:

> Once the employer has made more than a negligible effort to accommodate the employee (*Trans World Airlines v. Hardison, supra,* 432 U.S. at 77, 97 S.Ct. 2264) and that effort is viewed by the worker as inadequate, the question becomes whether the further accommodation requested would constitute "undue hardship."

589 F.2d at 405.

■ The holding of *Burns* establishes that where the accommodation proposed by an employer fails to eliminate the affected employee's religious conflict, the employer must implement an alternate accommodation proposed by the employee, unless the employer proves that the accommodation would cause "undue hardship" to the employer. 589 F.2d at 407.

The district court relied solely upon the *Burns-Anderson* rule in concluding that the Postal Service had failed to satisfy its obligation under Title VII. It reasoned that since Lindstrom and Davis rejected the accommodation proposed by the Postal Service, the Postal Service was required to implement the alternate accommodation proposed by those employees unless that accommodation would cause "undue hardship." The court found it irrelevant that the Postal Service's accommodation may have been reasonable. The district court's reliance upon the *Burns-Anderson* rule was misplaced.

The factual context of the instant case is distinct from the context presented in either *Burns* or *Anderson.* Unlike those cases, the accommodation proposed by the Postal Service effectively eliminated the religious conflict visited upon the affected employees. Lindstrom and Davis rejected the proposed accommodation, not because the transfer failed to eliminate their religious conflict, but because they believed the accommodation would place them in a less attractive employment status. The distinction is critical because it renders the rationale upon which the *Burns-Anderson* rule is premised inapposite in the present context.

The position advanced by Lindstrom and Davis stands for the proposition that an employer must accept any accommodation, short of "undue hardship," proposed by an employee, regardless of whether the employee rejects an accommodation proposed by the employer solely on secular grounds. Title VII does not compel that conclusion.

■■ Section 701(j) of Title VII, in conjunction with Section 703(a)(1), requires an employer to accommodate the religious beliefs of an employee in a manner which will reasonably preserve that employee's employment status, *i.e.,* compensation, terms, conditions, or privileges of employment. Accordingly, where a certain aspect of an employment situation creates a religious conflict for a particular employee, the employer must take some initial step to reasonably accommodate the religious belief of that employee. *Burns,* 589 F.2d at 405. If the accommodation proposed by the employer fails to eliminate the employee's religious conflict, the employer must implement an alternate accommodation proposed by the employee, unless implementation of that accommodation would cause "undue hardship" to the employer. *Id.*

■ Where an employer proposes an accommodation which effectively eliminates the religious conflict faced by a particular employee, however, the inquiry under Title VII reduces to whether the accommodation reasonably preserves the affected employ-

ee's employment status. The employer, of course, bears the burden in the first instance of establishing that fact. If the proposed accommodation reasonably preserves that status, the employer has satisfied its obligation under Title VII. Where the employer's proposal does not reasonably preserve the affected employee's status, however, the employer has not satisfied its obligation.

Unlike the context where the issue presented is whether the proposed accommodation eliminates the religious conflict at issue, the determination of whether or not the employment status of the affected employee is reasonably preserved may be objectively assessed by the trier of fact. The need of the court to rely upon the purely subjective assessment of the affected employee, which generated the *Burns-Anderson* rule in the former context, is obviated in the latter context.

The conclusion we reach is consistent with the design of Section 701(j) of Title VII. As the Court of Appeals for the Fifth Circuit has appropriately noted, Section 701(j) of Title VII is premised on "bilateral cooperation." *Brenner v. Diagnostic Center Hospital*, 671 F.2d 141 (5th Cir.1982). The *Brenner* court recognized that although the statutory burden to accommodate rests with the employer, the employee has a correlative duty to make a good faith attempt to satisfy his needs through means offered by the employer. In other words, a reasonable accommodation need not be on the employee's terms only. In *Yott v. North American Rockwell Corp.*, 602 F.2d 904 (9th Cir.1982), we specifically recognized the existence of a concomitant duty on the part of an employee to cooperate in reaching an accommodation under Section 701(j). 602 F.2d at 907–08. The proposition advanced by the employees in the present case would have the effect of shifting the entire responsibility for accommodation to the employer, by granting an employee the unequivocal right to have every alternative assessed under the "undue hardship" standard. Such a result runs contrary to the basic premise of Section 701(j), *i.e.*, mutual cooperation.

## CONCLUSION

The district court determined that the accommodation of transfer proposed by the Postal Service effectively removed the religious conflict facing Lindstrom and Davis. The district court erred, however, when it failed to address whether the transfer reasonably preserved the employment status of Lindstrom and Davis. The court misconstrued the *Burns-Anderson* rule by concluding that the Postal Service was required to accept the alternate accommodation of referral suggested by Lindstrom and Davis unless that accommodation would cause the Postal Service "undue hardship."

Because the district court applied an incorrect standard of law, the judgment of the district court is REVERSED. The case is REMANDED to the district court for the purpose of allowing the court to determine whether the accommodation proposed by the Postal Service reasonably preserved the employment status of Lindstrom and Davis.