**SEDALIA # 200 SCHOOL DISTRICT,
Respondent,**

v.

**MISSOURI COMMISSION ON HUMAN
RIGHTS, Appellant.**

**No. WD 45447.**

Missouri Court of Appeals,
Western District.

July 14, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
Sept. 1, 1992.

Application to Transfer Denied
Oct. 27, 1992.

James T. Buckley, Sedalia, for respondent Sedalia School.

William L. Webster, Atty. Gen., Robert V. Franson, Asst. Atty. Gen., Jefferson City, for appellant Missouri Com'n.

Before LOWENSTEIN, C.J., and BERREY and SPINDEN, JJ.

LOWENSTEIN, Chief Judge.

This case presents a straightforward issue as to how far and to what extent an employer must go to accommodate the religious beliefs of an employee, under § 213.-055.1(1)(a), RSMo 1986. As pertinent here, § 213.055.1(1)(a) makes it an unlawful employment practice for an employer to discharge or discriminate against an employee due to an individual employee's religion or religious beliefs. At issue is an employee's request to not be required to translate or sign to deaf students "cursing or bad language," due to the employee's religious beliefs.

The Missouri Commission on Human Rights (Commission) brought this matter against the Sedalia School District (District) as part of the Commission's duty to uphold the provisions of Chapter 213 relating to employment discrimination. The Chief Hearing Examiner for the Commission found for the District, the Commission itself disagreed and found against the District, and the circuit court reversed the Commission, on grounds of hardship to the District.[1]

The facts as found show that Mary E. Schumaker, a member of the United Pentecostal Church, was employed by the District as an interpreter and tutor for deaf students. During her three prior years employment she worked at an elementary school a year and then at a middle school for two years. In those positions, she either modified language she found objectionable, or informed students that the speaker had cursed or used "bad language." Schumaker would not take God's name in vain nor use everyday swear words. She interpreted the line in *Gone With The Wind*, "Frankly my dear, I don't give a damn," as "Frankly, I don't care." During a film shown in science class about an erupting volcano, a man who wouldn't get off the mountain "was using bad language," and Schumaker "didn't interpret it."

The District then set up an advisory committee of deaf students' parents and teachers to develop guidelines for interpreters. The committee procured a copy of the guidelines of the Registry for Interpreters of the Deaf (R.I.D.), a nationally recognized organization, and after deliberation, adopted the guidelines. Set out below is a portion of the R.I.D. guidelines important to this case. The advisory committee felt it was necessary for deaf students to develop socially, and that students should receive exact information and make their own

1. The employee, Mary E. Schumaker, initiated the proceedings by making a complaint of discrimination to the Commission's staff, which then investigated her claims. The executive director decided probable cause existed, and the

Attorney General filed an action before the Commission on the employee's behalf, but as a representative of the Commission not of Schumaker. Hence, this is not Schumaker's claim, but the Commission's.

judgments; the underlined sentence was *not* adopted by the committee:

> Interpreter/transliterators are not editors and must transmit everything that is said in exactly the same way it was intended. This is especially difficult when the interpreter disagrees with what is being said or feels uncomfortable when profanity is being used. Interpreter/transliterators must remember that they are not at all responsible for what is said, only for conveying it accurately. *If the Interpreter/transliterator's own feelings interfere with rendering the message accurately, he/she shall withdraw from the situation.*

Before the guidelines were formally adopted, Schumaker told District personnel she couldn't interpret "everything" due to her religious convictions against using "bad language;" never has anyone questioned the genuineness of Schumaker's religious beliefs.

The District's board then adopted the committee's guidelines, including the requirement of literal word for word interpretation to the deaf students. When it came to contract time, Schumaker wrote on her contract "1) I request to go to primary level, 2) I request from parent to tell the child they are cursing or using bad language." Her feeling was that there would be fewer obscene words used at the primary school. However, the District, due to Schumaker's 22 years of signing experience, wanted to use her at the higher grade levels, rather than in primary levels, where other interpreters were better suited to work. Because she would not work at the District's high school under the new guidelines, she was terminated. This court reviews the Commission's conclusion that the District failed to accommodate her religious beliefs by making no attempt to put her in a grade school, or acceding to her proviso of being able to talk to the deaf students' parents about her non-literal interpretations.

■ In reviewing discrimination suits, Missouri courts have given deference to federal cases construing similar claims under federal law, *Laclede Cab v. Com'n on Human Rights,* 748 S.W.2d 390 (Mo.App. 1988); *Kansas City v. Mo. Com. on Human Rights,* 632 S.W.2d 488, 490 (Mo. banc 1982). The plaintiff or employee carries the burden of establishing a prima facie case of religious discrimination, *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). This is accomplished when the plaintiff demonstrates 1) a bona fide belief that compliance with an employer's requirement would be contrary to his or her religious belief, 2) the employer has been so notified, and, 3) the employee was discharged for failing to comply with the requirement. Schumaker and the Commission made such a case.

The burden then shifts to the respondent or the employer to show it could not accommodate the employee's beliefs without incurring undue hardship, *Brener v. Diagnostic,* 671 F.2d 141, 144 (5th Cir.1982). This accommodation to a religious belief requires the employer to find and utilize alternatives which 1) do not compromise the employment entitlements of others, or 2) which do not require the employer to incur more than *de minimis* costs, *Trans World Airlines v. Hardison,* 432 U.S. 63, 83–84, 97 S.Ct. 2264, 2276, 53 L.Ed.2d 113 (1977). If the employer has satisfied this burden to accommodate, which is the pivotal issue in the case at bar, then the plaintiff or employee must by a preponderance of evidence show that the employer's efforts were merely pretextual, *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

Although not binding on the Commission, the Chief Hearing Examiner for the Commission decided in favor of the District. The Hearing Officer first noted that during the District's solicitation of her's and others' views when considering and adopting guidelines, no accommodation could be given Schumaker, nor anyone else in her position, without bending those guidelines. He concluded therefore that once the guidelines were in place nothing could be done. This court does not agree with that conclusion, but feels an ultimate determination must rest on whether the guidelines and their implementation improperly tram-

melled upon Schumaker's religious beliefs. The Hearing Officer did conclude that the accommodation of Schumaker would result in an undue hardship on the District, and her placement at the primary level would be wasting her talents, as the District needed her at the higher grades, plus there would be no guarantee that primary students would not use offensive language.

The Commission decided otherwise in its Decision and Order, and found telling the fact that the District did not utilize the R.I.D. guideline language allowing the interpreter to withdraw from the situation if their own feelings interfered with an accurate message being conveyed. It did note obscene words were used on the elementary school playground, but that although the "need to interpret obscenity ... might occur, it seldom did take place." The Commission, noting Missouri Regulations comporting with the federal cases mentioned *supra, i.e.,* 4 CSR 180–3.050,[2] found that after adoption of guidelines the District made no further effort to satisfactorily accommodate Schumaker, and found a violation by the District.

■ The circuit court's legal conclusion was adverse to the Commission. The court entered a judgment that the District had the right in adopting guidelines to "conduct ... its business of providing education to all students ...," and was not constrained to follow the R.I.D. guidelines. The court found it would be a hardship to, as the Commission argued, have another interpreter come in to a classroom and "interpret the materials or presentations, deemed by complainant to be offensive—an obvious hardship to other instructors, other students and the practicability of presenting a coherent instructional program. Such a motion would require lectures to be halted, not to mention dramatic presentations, film presentations, etc." The circuit court con-

cluded that the policy guidelines were not directed at Schumaker nor were they discriminatory, and putting her in a grade school classroom would not solve the problem, but any problem might only occur with less frequency. The circuit court concluded that there was nothing in the record that the District's guidelines amounted to anything other than "sound and universally accepted concepts in deaf education."

The legal conclusion of the circuit court is adopted. The scope of judicial review is outlined by the following passage from *Missouri Commission on Human Rights v. City of Sikeston,* 769 S.W.2d 798, 800 (Mo.App.1989):

> On this appeal this court reviews the findings and decision of the Commission, not the judgment of the circuit court. *Hulshof v. Mo. Highway & Transp. Com'n,* 737 S.W.2d 726, 727 (Mo. banc 1987). This court must decide "whether the Commission, after detached consideration of all the evidence before it, could reasonably have made the findings and order, whether the decision is arbitrary, capricious unreasonable or an abuse of discretion." *Midstate Oil v. Mo. Com'n on H. Rights,* 679 S.W.2d 842, 846 (Mo. banc 1984).

The Commission made a prima facie case under the previously enunciated requirements of *Trans World Airlines, supra,* but this court rules that the Commission's decision was unreasonable. The Sedalia School District could not have accommodated Schumaker's religious beliefs without compromising the educational entitlements of deaf students, hearing impaired students or even students with full range of hearing. Requiring a literal translation of classroom conversation is not an unreasonable guideline. Neither Schumaker nor the Commission could articulate what her reli-

**2.** This rule states as follows, with emphasis added:

The employer has an obligation to make reasonable accommodations to the religious need of employees and prospective employees where such accommodations can be made *without undue hardships on the conduct of the employer's business.* Such undue hardship, for example, may exist where the employee's needed work cannot be performed by another employee of substantially similar qualifications during the period of absence of the Sabbath observer. The commission will review each case on an individual basis in an effort to seek an equitable application to these rules to the variety of situations which arise due to the varied religious practices of the people of this state.

gious beliefs were, other than that she did not want to use or repeat any words which she found offensive. Neither could they reasonably define what words were included in her personal taboo list. This would have made the District entirely beholden to Schumaker in making *ad hoc* decisions about which words to translate.

The District should not be required to subject itself to a potentially arbitrary administration of its policy. Due to the virtual impossibility of accommodating Schumaker's religious beliefs, no further meetings or attempts to negotiate with her would have netted a satisfactory compromise. To require the District to assign a specific teacher to an area where a compromising situation might arise is unreasonable. Requiring a shuffling of other interpreter's in and out of a classroom on an *ad hoc* basis would disrupt attempts to educate. Moving interpreters into classrooms where their abilities and experience are either under-used or over-taxed is unreasonable. Similarly, having an interpreter pre-censor work with parents would create an ill-advised policy, and would be subject to the same definitional problem previously mentioned—there being no information as to what words or in what context those words would offend the employee. Hardship and more than a *de minimis* cost are demonstrated by the District.

The District's attempts to accommodate deaf students should not be thwarted by deciding its efforts to accommodate Schumaker's religious beliefs were insufficient. No further meetings or attempts would have netted a satisfactory compromise without an undue hardship to the employer and without compromising the educational process for deaf students and all other students. There is no evidence or finding in this case that by not adopting the national R.I.D. guidelines *in toto* the District abrogated any duty.

Finally, it should be mentioned that the nature of the employer's business, educating students of many abilities and some impairments, bears on this result. This business presents a difficult task at the very least, and the burden on the District

to accommodate Schumaker's religious beliefs by halting classes or bringing in a second interpreter outweighs any burden on Schumaker. Under the standard of review, the result reached by the Commission finding discrimination is unreasonable. The District's regulation requiring literal translation was reasonable as a legitimate means of giving students social and educational skills and awareness, and was applied here without discrimination. *Cf. Kisco Co. v. Missouri Com'n on Human Rights,* 634 S.W.2d 497, 498 (Mo.App.1982).

In conclusion, the District's role as a public school, the parent/teacher recommendation of the guidelines, the District's subsequent adoption of those guidelines, Schumaker's lack of specificity regarding what she will or will not translate, and the inability of the District to alter the interpreter program without extreme hardship, leads this court to reverse the decision of the Commission as unreasonable. The District has satisfied its burden to accommodate under these facts, *Brener* and *Trans World Airlines,* supra, and Schumaker presents no evidence of pretext, *Texas Dept. of Community Affairs v. Burdine,* supra.

Affirmed.

SPINDEN, Judge, concurring.

I concur but feel compelled to comment that Chief Judge Lowenstein's opinion places far too much emphasis on the reasonableness of the District's policy. The opinion agrees with the trial court's conclusion that the District's policy is "sound," but it is not the District's policy which we must review. In this case, we must presume the District's policy to be reasonable. Our duty is to judge whether the District has taken sufficient steps to accommodate Mary Schumaker's sincerely-held religious beliefs.

Because she is not able to articulate with any reasonable amount of definiteness what words would be included in her personal taboo list, she leaves the District and the parents of the deaf students beholden to her *ad hoc* administration of the District's policy. This is unreasonable and

makes accommodating her religious beliefs virtually impossible. Hence, pursuant to Regulation 4 CSR 180–3.050 and the case law cited by Chief Judge Lowenstein, I conclude that accommodating her religious beliefs would place an undue hardship on the conduct of the District's educational policy.

BERREY, Judge, dissenting.

I must respectfully dissent from the majority opinion. The school board did not attempt to accommodate the religious beliefs of Ms. Schumaker. The school board did not overcome its burden by proving it made any effort, let alone a good faith effort, to accommodate those beliefs. Had the school board met with Ms. Schumaker, it is entirely possible an accommodation could have been achieved. Refusing to meet with her and discuss her concerns shut the door on such possibility and was not in the spirit of the law. The school board took no initial steps to obviate Ms. Schumaker's concerns—a critical failure under the law and one which the majority brushes aside.

This Court's duty is to uphold the decision of the commission if it was supported by competent and substantial evidence upon the entire record. *Hermel Inc. v. State Tax Comm'n*, 564 S.W.2d 888, 894 (Mo. banc 1978).

> "Substantial evidence" is evidence which, if true, has probative force upon the issues, i.e., evidence favoring facts which are such that reasonable men may differ as to whether it establishes them; it is evidence from which the trier or triers of the fact reasonably could find the issues in harmony therewith; it is evidence of a character sufficiently substantial to warrant the trier of facts in finding from it the facts, to establish which the evidence was introduced.

*Collins v. Division of Welfare*, 364 Mo. 1032, 270 S.W.2d 817, 820 (Mo. banc 1954). We must affirm the commission's decision unless it is arbitrary, capricious or unreasonable or the commission abused its discretion. *Hermel*, 564 S.W.2d at 894. This Court must consider the evidence in a light most favorable to the findings of the administrative body, together with all reasonable inferences which may be drawn therefrom to support its findings, disregarding all evidence opposing and unfavorable to the commission's decision. *JMH Constr. Management, Inc. v. Labor & Indus. Relations Comm'n*, 810 S.W.2d 521, 524 (Mo. App.1991). This Court is not to substitute its judgment on the evidence for that of the commission. *Id.* If the evidence would support either of two opposed findings, this Court is bound by the administrative determination. *Hermel*, 564 S.W.2d at 894.

To establish a prima facie case of religious discrimination, the plaintiff has the burden of pleading and proving that (1) she had a bona fide religious belief; (2) she informed her employer of her belief and it conflicted with her responsibilities as an employee; and (3) she was threatened with or subjected to discriminatory treatment, such as discharge, for her inability to fulfill the disputed job duty. *E.E.O.C. v. Hacienda Hotel*, 881 F.2d 1504, 1512 (9th Cir. 1989). All parties agree that Ms. Schumaker met her burden in establishing a prima facie case, *at which time the burden shifted to the employer school district to prove that it made good faith efforts to accommodate those beliefs*. The school district must show that it has taken "some initial steps to reach a reasonable accommodation of the particular religious belief at issue." *Id.* (quoting *American Postal Workers Union v. Postmaster General*, 781 F.2d 772, 776 (9th Cir.1986)). If the school district fails to propose an accommodation, it must accept Ms. Schumaker's proposal or demonstrate that her proposal would cause the district undue hardship. *Id.*

Ms. Schumaker proposed that she be placed in an elementary school and that she be allowed to talk with the parents of the student to which she was assigned to determine if they objected to a less literal translation of objectionable words. The school district representatives testified that Ms. Schumaker's talents would have been under utilized had they placed her at the elementary level, as she requested. It

seems apparent, however, that under utilization is preferable to completely losing her talents as an interpreter. Additionally, because each interpreter is, for the most part, assigned to only one student for the entire year and interpreters are not generally required to interpret during recess or in the hallways, where objectionable language is most likely to occur, Ms. Schumaker's proposals are at least plausible enough to be considered by the board. That is not, however, the extent of the district's responsibility. It must attempt to reach an accommodation with Ms. Schumaker.

In the case at bar, there is no evidence whatsoever that the school district took any steps to attempt to reach an accommodation of Ms. Schumaker's religious beliefs nor is there any evidence that any possible accommodation was ever discussed by the school board or any persons responsible for making such assessment. Ms. Schumaker was informed from her initial objection to the guidelines that if she was unable to abide by them, she would have to resign or she would not be recommended for continued employment.

When confronted with the standard of review that this court is bound by, I cannot concur with Judge Lowenstein's opinion. We must affirm the decision of the commission if there is substantial evidence to support it. The evidence adduced at the hearing is more than adequate to support the findings of the commission and, therefore, I would reverse the decision of the circuit court and affirm that of the commission.