IN THE

# ARIZONA COURT OF APPEALS
DIVISION TWO

---

DAVID STONE, AN INDIVIDUAL,
*Plaintiff/Appellant,*

*v.*

PIMA COUNTY, A POLITICAL SUBDIVISION OF THE STATE OF ARIZONA,
*Defendant/Appellee.*

No. 2 CA-CV 2025-0219
Filed June 11, 2026

---

Appeal from the Superior Court in Pima County
No. C20231812
The Honorable Wayne E. Yehling, Judge

**REVERSED AND REMANDED**

---

COUNSEL

Pacific Justice Institute, Tucson
By Carmen E. Lyon
*Counsel for Plaintiff/Appellant*

Laura Conover, Pima County Attorney
By Harris Rubin, Yvette Patterson, J. William Brammer Jr., and James W.
Rappaport, Deputy County Attorneys, Tucson
*Counsel for Defendant/Appellee*

**OPINION**

Judge O'Neil authored the opinion of the Court, in which Judge Eckerstrom and Judge Sklar concurred.

O' N E I L, Judge:

¶1 David Stone appeals from the superior court's grant of summary judgment in favor of Pima County. The court concluded that undisputed facts established the County had made good faith efforts to provide Stone a reasonable accommodation, consistent with Title VII of the Civil Rights Act, after he declined COVID-19 vaccination for religious reasons. We reverse the court's decision because genuine issues of material fact precluded summary judgment concerning the reasonableness of the County's accommodation.

**Background**

¶2 Stone was a defense investigator for Pima County's Public Defense Services (PCPDS). Part of his job was to investigate cases and facilitate communication with people in jail. According to Stone, by 2021, he rarely met people in person at the jail. He conducted most interviews by video and had not entered the jail for about a year.

¶3 In October 2021, the Pima County Board of Supervisors mandated COVID-19 vaccination for employees in contact with "vulnerable populations." The mandate required employees in covered positions to be fully vaccinated by the end of 2021. Otherwise, those employees could not continue working in their positions absent a qualifying exemption. The County determined that incarcerated people were vulnerable, which meant PCPDS employees were covered.

¶4 The County created a reappointment process for employees who declined vaccination due to sincerely held religious beliefs. That process required employees to engage with the county's Human Resources department (HR) and seek reappointment into vacant county positions that did not require interaction with vulnerable populations. Reappointment was limited, however, to positions at an equal or lower salary grade. The process also required employees to find qualifying positions, notify HR, obtain consent from the appointing authorities for the proposed new positions, and meet minimum qualifications. HR would handle the

administrative process of reappointment. An unvaccinated employee who did not find a qualifying reappointment by the deadline would be terminated.

¶5 Stone requested a religious exemption from vaccination in September 2021. Even before the vaccine mandate, Stone had been pursuing a criminal investigator position with the Pima County Attorney's Office (PCAO) through a separate hiring process. That position required additional certification. After determining that Stone's existing position with PCPDS required vaccination, the County informed him of the reappointment process and the deadline for identifying and notifying HR of an eligible vacant position. It assigned him an HR coordinator to help with that process. Stone responded that he was transferring to the PCAO "as a detective/investigator" and had taken the necessary steps to secure that position. But because that position was higher paid, it did not qualify for the County's reappointment process. Stone did not identify any equal or lower-paid vacancy for HR to evaluate, nor did he engage further with HR. In January 2022, the PCAO withdrew its anticipated offer for the criminal investigator position because Stone could not meet the additional certification requirement. The County later scheduled a "[p]re-action" meeting for employees who had not yet found replacement positions. Stone did not attend. The County terminated Stone's employment.

¶6 Stone filed this action alleging wrongful termination, retaliation, and religious discrimination, including failure to accommodate. The County moved to dismiss several counts, which the superior court granted, leaving only the failure-to-accommodate claim. The County later moved for summary judgment on that remaining claim. After a hearing, the court granted the motion, concluding the undisputed record established that the County had made good faith efforts to accommodate and that Stone had not availed himself of the offered accommodation. We have jurisdiction over his appeal. A.R.S. §§ 12-120.21 and 12-2101(A)(1).

**Discussion**

¶7 Stone contends the superior court resolved disputed facts and drew inferences against him when it determined, as a matter of law, that the County had offered a "reasonable accommodation." He further contends the County's process did not satisfy Title VII's accommodation requirements, including asserted duties to engage in back-and-forth negotiation and to consider alternatives to reappointment or termination.

¶8            Summary judgment is appropriate when the moving party demonstrates that no genuine issue of material fact exists and that it is entitled to prevail as a matter of law. Ariz. R. Civ. P. 56(a). We review statutory interpretation and summary judgment questions de novo. *Wilks v. Manobianco*, 237 Ariz. 443, ¶ 8 (2015). In doing so, we view the evidence in the light most favorable to the party against whom judgment was entered. *McAlister v. Loeb & Loeb, LLP*, ___ Ariz. ___, ¶ 21, 571 P.3d 891, 897 (2025).

¶9            Title VII prohibits religious discrimination and requires an employer to reasonably accommodate an employee's religious practice if it can do so without undue hardship. *See* 42 U.S.C. §§ 2000e-2(a)(1), 2000e(j); *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 73-74 (1977). Specifically, Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion." § 2000e-2(a)(1). And "religion" is defined as including "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's . . . religious observance or practice without undue hardship." § 2000e(j). In other words, when an employee's sincerely held belief conflicts with a job responsibility, an employer must reasonably accommodate it unless doing so would cause undue hardship. *Heller v. EBB Auto Co.*, 8 F.3d 1433, 1437-38 (9th Cir. 1993).

¶10            In keeping with this requirement for employers, a prima facie claim for failure to accommodate requires an employee to show a sincere religious belief that conflicts with an employment requirement, notice to the employer of the belief and the conflict, and adverse treatment resulting from the conflict. *Id.* at 1438. Once the employee has made those showings, the employer must demonstrate it "initiated good faith efforts to accommodate the employee's religious practices." *Id.*

¶11            Under Ninth Circuit case law, on which both parties rely, an employer satisfies its obligation when it offers an accommodation that eliminates the religious conflict and reasonably preserves the employee's employment status. *Am. Postal Workers Union, S.F. Loc. v. Postmaster Gen.*, 781 F.2d 772, 775-77 (9th Cir. 1986). To avoid running afoul of Title VII, that accommodation must preserve the employee's "compensation, terms, conditions, [and] privileges of employment." *Id.* at 776. If the employer has provided a reasonable accommodation, the inquiry ends. *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68 (1986). The employer need not prove that

any alternative accommodations preferred by the employee would impose undue hardship. *Id.* But if the employer's proposed accommodation does not reasonably preserve the employee's status, "the employer has not satisfied its obligation." *Am. Postal Workers Union, S.F. Loc.*, 781 F.2d at 777.

¶12 This accommodation framework contemplates "mutual cooperation," including an employee's correlative duty to make a good faith attempt to satisfy his needs through means offered by the employer. *Id.* The employee is not required, however, to make "any efforts to compromise his or her religious beliefs or practices before seeking an accommodation from the employer." *Heller*, 8 F.3d at 1438. Rather, once the employee has notified the employer of a conflict with a sincere belief, it is incumbent on the employer to make good faith efforts at accommodation. *See id.*

¶13 For purposes of the County's motion for summary judgment, the parties did not dispute that Stone's religious objection to the COVID-19 vaccination is sincere, that he had informed the County of that objection, and that he suffered adverse treatment due to the resulting conflict, in the form of termination. *See id.* The question, then, is whether the record presents a genuine dispute that the County failed to initiate good faith efforts to accommodate Stone's belief.

¶14 The undisputed record shows that the County offered Stone a mechanism that could have resulted in reappointment to a vacant county position not involving "vulnerable populations," assuming such a position existed. But the process itself gave no indication that any reappointment would have been to a position that preserved Stone's employment status. *See Am. Postal Workers Union, S.F. Loc.*, 781 F.2d at 776. To the contrary, the reappointment mechanism required Stone to find a position of equal or lesser pay. And in fact, nothing about the mechanism itself suggested that Stone would ultimately receive any accommodation at all. Even if a suitable position was available, the prospective department would have decided whether to consider his reappointment through a competitive or non-competitive process. In other words, the reappointment mechanism required Stone to find his own accommodation, but without guaranteeing that the County would treat his application any differently from that of a non-employee even if he found a qualifying open position, much less that it would preserve his employment status and compensation.

¶15 Title VII, by contrast, places no burden on an employee to find a way to accommodate his religious beliefs alongside his employment obligations. *See Heller*, 8 F.3d at 1438. The obligation to accommodate

instead rests with the employer. §§ 2000e-2(a)(1), 2000e(j). In arguing that its reappointment mechanism amounted to a reasonable accommodation, the County points to Stone's failure to adequately engage with the process it provided for him to seek a new position. The County insists that the process, had Stone pursued it, could have resulted in a position that preserved his status. Citing *American Postal Workers Union, San Francisco Local*, the County emphasizes that it was required to take only "some initial step to reasonably accommodate" Stone, after which the Title VII framework required Stone to "cooperate in reaching an accommodation." 781 F.2d at 776-77.

¶16     We do not diminish an employee's obligation to cooperate with an employer in pursuing an accommodation agreeable to both. A "reasonable accommodation need not be on the employee's terms only," and an employee must "make a good faith attempt to satisfy his needs through means offered by the employer." *Id.* at 777. But the employee's duty presupposes that an employer has offered such means in the first place by proposing a reasonable accommodation. *Id.* at 776-77. The fuller context of *American Postal Workers Union, San Francisco Local* is instructive:

> [W]here a certain aspect of an employment situation creates a religious conflict for a particular employee, the employer must take some *initial step to reasonably accommodate* the religious belief of that employee. If *the accommodation proposed by the employer* fails to eliminate the employee's religious conflict, the employer must implement an alternate accommodation proposed by the employee, unless implementation of that accommodation would cause "undue hardship" to the employer.

*Id.* at 776 (citation omitted) (emphasis added). This analysis equates the "initial step to reasonably accommodate" with "the accommodation proposed by the employer." *Id.* In other words, the employer's "initial step" is to propose a reasonable accommodation. *Id.* When it has done so, the employee then has a duty "to cooperate in reaching an accommodation," even if the accommodation is not what the employee might prefer. *Id.* at 777. But the employer "bears the burden in the first instance" of proposing an accommodation that "reasonably preserves the affected employee's employment status." *Id.* at 776-77. If it fails to do so,

the employer must show that the employee's proposed accommodation would cause undue hardship. *Id.* at 776; *see also EEOC v. Hacienda Hotel*, 881 F.2d 1504, 1512 (9th Cir. 1989) ("If the employer does not propose an accommodation, the employer must accept the employee's proposal or demonstrate that the proposal would cause the employer undue hardship.").

¶17            Although we are not bound by the Ninth Circuit's analysis, the essence of this approach follows necessarily from the employer's statutory duty. Title VII prohibits adverse action against an employee on the basis of religion unless the employer is "unable to reasonably accommodate" the employee's beliefs without undue hardship. §§ 2000e-2(a)(1), 2000e(j). Once an employee has shown a religious conflict, therefore, "the statutory burden to accommodate rests with the employer." *Am. Postal Workers Union, S.F. Loc.*, 781 F.2d at 777. The employee is not required to do more than notify the employer of the belief and the conflict to trigger that obligation. *Heller*, 8 F.3d at 1438. And nothing less than a reasonable accommodation can satisfy it. The County's argument, in effect, both lessens the employer's initial burden and places a prior burden on the employee that Title VII does not contemplate.

¶18            As noted above, there has been no dispute that Stone has a sincere religious objection to the vaccine mandate, that he properly informed the County of the religious conflict, and that the County terminated him because of it. That is enough to establish a prima facie claim. *Id.* The sole question, then, is whether, as a matter of law, the County satisfied its obligation to propose a reasonable accommodation. Anything less than a reasonable accommodation, absent a showing of undue hardship, was a violation of Title VII. The facts here, when viewed in the light most favorable to Stone, demonstrate only that the County's reappointment mechanism—had Stone seen it through to completion— might or might not have reasonably accommodated Stone's beliefs. *See McAlister*, ___ Ariz. ___, ¶ 21, 571 P.3d at 897. But the nature of the mechanism left Stone to seek his own accommodation; and even had he found an available position with equal status and compensation, the mechanism permitted the County to treat his application no differently from any other. Given these characteristics of the mechanism, we cannot say that it met the County's obligation to propose a reasonable accommodation as a matter of law.

¶19            We acknowledge that Stone did not fully engage with the County's reappointment mechanism, because he sought employment with

the PCAO on his own. Stone's own ultimately unsuccessful efforts do not affect our analysis, at least for summary judgment purposes, of the mechanism offered by the County. Whether that mechanism satisfied the County's obligation is a genuine issue of material fact that precludes summary judgment. *See* Ariz. R. Civ. P. 56(a).

¶20 We express no opinion as to whether a reasonable factfinder might conclude the County's reappointment mechanism amounted to a reasonable accommodation. This is a question for trial. Nor does our analysis limit the arguments of either side at trial.

## Disposition

¶21 We reverse the superior court's grant of summary judgment and remand for further proceedings. Stone requests an award of attorney fees and costs on appeal pursuant to Rule 21, Ariz. R. Civ. App. P., A.R.S. §§ 12-341, 12-342, and 42 U.S.C. § 2000e-5(k). We deny his request because it is premature, at this stage, to regard either party as having prevailed.